# MACKALL v. CASILEAR.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 97. Argued November 26, December 1, 1890. — Decided December 22, 1890.

The plaintiff, having averred in his complaint the execution of a deed by him to his father, and having conceded its delivery, and there being no prayer for specific relief as to it, and no averments that would entitle him to have it set aside for want of acknowledgment under the prayer for general relief, he cannot set up that the deed is not operative, even as between the parties, for want of proper acknowledgment and record.

When a deed is void on its face the interference of a court of equity is unnecessary.

Where the difficulty of doing entire justice by reason of the death of the principal witness or witnesses, or from the original transactions having become obscured by time, is attributable to gross negligence or deliberate delay, a court of equity will not aid a party whose application is thus destitute of conscience, good faith and reasonable diligence.

The mere assertion of a claim, unaccompanied by any act to give effect to it, cannot avail to keep alive a right which would otherwise be precluded.

Negotiations for settlement of a disputed matter, which one party hopes may result in a settlement and adjustment, do not operate to bar in equity the defence of laches, when the other party gives no encouragement, to such hopes, never promises a settlement, never concedes that his own claims are doubtful, and never recognizes the other's claims.

The bill in this case alleged that in a suit in equity in the Supreme Court of the District of Columbia in which the plaintiff here was defendant, the conveyance under which the plaintiff in this suit claims had been decreed to be invalid, from which decree the plaintiffs in that suit had appealed as to other matters involved; and it set up the pendency of that suit as excuse for the delay of nineteen years in bringing this one. *Held,*

(1) That, the plaintiff not having appealed, it was difficult to see why that decree was not a bar in this suit;

(2) That it furnished no satisfactory explanation of his *laches* herein.

BROOKE MACKALL, JR., filed his bill of complaint in the Supreme Court of the District of Columbia on the first day of June, 1885, against George W. Casilear and wife; Leonard Mackall and wife; Don Barton Mackall, Benjamin Mackall; Louise Owens and husband; Catherine Christy and husband; Edmund Brand and Mary E. Keller; alleging that Leonard, Don Barton and Benjamin were his brothers, and Louise

Owens and Catherine Christy his sisters, all being the sole surviving children of Brooke Mackall, Sr., and Martha Mackall, his wife; and that Edmund Brand and Mary E. Keller were the sole surviving children of Louis Brand.

The bill then stated: That on or about December 21, 1863, complainant became owner in fee simple, through a conveyance to him from Charles W. Pairo, George Randolph, executor, and Brooke Mackall, Sr., of lots in the city of Washington, D.C., as follows:

Lot 2, square 5; lots 3 and 7, square 17; lot 3, square 31; lot 15, square 41; lot 2, square 42; lot 5, square 43; lot 12, square 56; lot 10, square 62; lots 13, 14 and 17, square 76; and a copy of the deed was annexed. That on or about May 5, 1866, complainant executed his promissory notes to the order of his father, and a deed of trust to said Brooke Mackall, Sr., as trustee, which deed was acknowledged before the latter as notary public, upon lot 2, square 5; two parts of lot 12, square 56; and lots 14, 17 and part of 13, square 76, which was recorded June 5, 1867, and a copy whereof was annexed; that there was no consideration for these notes, but they were made for the accommodation of complainant's father for the purpose of borrowing money for the benefit of both, but no money was borrowed, and it was not intended that any claim on the notes should be set up against the complainant, and there was no default in the payment of the same; that about seven years after, a variance occurring between complainant and his father, his father, having possession of the notes, without complainant's knowledge or consent, advertised said property for sale, except one subdivision of lots 13 and 14, square 76, which had in the meantime been otherwise disposed of by complainant; that the advertisement (a copy of which was annexed) was published only on three successive days, though the trust deed required a publication of sixty days; that it was intended that the sale should be kept concealed from complainant, and it was not held on the premises, but at the rooms of the auctioneer; that no bidders were present, and at the instance of his father the property was struck off nominally to one Joseph B. Hill, but really for the benefit of com

plainant's father, no money being ever paid by Hill, and his name being used that it might not appear that the trustee was a purchaser at his own sale; that this was a scheme devised by the father to divest the son of his property and obtain it himself without paying anything whatever for it; that in pursuance of such scheme, a deed (a copy of which was annexed) was executed by Brooke Mackall, Sr., as trustee, to Hill, for the nominal consideration of $2000, though Hill paid nothing; and complainant charged that the deed was void and of no effect. This deed was dated June 26, and recorded July 2, 1873.

The bill further averred that on or about March 13, 1867, complainant conveyed to one Morsell (a copy of which deed was attached) lot 15, square 41, and lot 5, square 43, in trust to secure complainant's promissory note for $1000, payable one year after date, to the order of his father, which note was indorsed over to Mills and wife, and was paid in full and so admitted to be paid by a deed conveying the same property, dated July 14, 1868, by Morsell, Mills and wife, and complainant to Louis Brand to secure in trust complainant's promissory note for $2000, payable to his father's order one year after date (a copy of which instrument was attached); that the $2000 note was an accommodation note and made to raise money for the common benefit of both parties, but no money was raised, and there was no consideration for the note; that about five years thereafter, there occurring a variance between father and son, the father, in pursuance of a similar scheme as that charged as to the other parcels, procured Brand to advertise the property for sale, and though publication for three weeks was required, the advertisement was published only four times successively, and for three days; that this was without the consent or knowledge of complainant, and without written request as prescribed, and the place of sale was at the private rooms of the auctioneer; that there were no bidders at the sale, but at the request of Brooke Mackall, Sr., lot 15, square 41, and sublots 2, 3, 4 and 5, lot 5, square 43, were struck off to Hill at the nominal sum of $2000, he paying no money, and Brooke Mackall, Sr., being the real purchaser, and

no payment or account was made to complainant, whereupon a conveyance in the handwriting of Brooke Mackall, Sr., was executed by said Louis Brand, trustee, to Hill, a copy of which was annexed, showing that the deed was recorded July 28, 1873; and complainant charged that the sale and deed were void. Complainant further averred that on the 4th of August, 1873, Hill executed a conveyance (a copy of which was annexed) to John C. McKelden and Edward McB. Timoney, as trustees, to secure a note of $3000 of B. Mackall, Sr., to F. A. Casilear, due in one year from the date thereof; that said trustees and said Casilear had full knowledge of the defects of title herein mentioned, and were not *bona fide* purchasers or creditors; that in October, 1874, default having been made by B. Mackall, Sr., in payment of the note of $3000, the trustees McKelden and Timoney advertised the property secured in the deed of trust to them for sale, and thereupon the complainant, at the date and place of sale so advertised, and before the sale, read a notice and caused copies thereof to be served upon Timoney and McKelden, and Williams the auctioneer, which notice was attached to the bill, and was to the effect that Timoney, McKelden and Williams had no authority to sell the premises, and that Mackall, Jr., would insist upon all his legal rights to the premises against them and against any purchaser or purchasers thereof, and protested against the sale; that the trustees proceeded to sell, and thereupon Casilear bid in the property at $2722.95, and a deed was given by McKelden and Timoney, as trustees, of sublots 2 and 3 of lot 5, square 43; lot 17, square 76; and two parts of lot 12, square 56; that on the 13th day of January, 1874, Hill as trustee and in his own right, and B. Mackall, Sr., joined in a conveyance to Leonard Mackall, as trustee, of lot 15, in square 41; sublots 2, 3, 4 and 5 of lot 5, square 43; lots 13, 14 and 17 in square 76; and two parts of lot 12, square 56, for the use and benefit of Mackall, Sr., and subject to his absolute control and disposal; that Mackall, Sr., departed this life February 28, 1880, and the brothers and sisters of complainant claim the property so conveyed to Leonard Mackall as trustee, as his heirs and devisees; that Casilear claims title to lot 17, square

76, and two parts of lot 12, square 56, as derived from the deed of Mackall, Sr., to Hill, and to sublots 2 and 3 of lot 15, square 43, as derived from the deed of Brand to Hill; that complainant's brothers and sisters claim title to lots 13, 14 and 17, square 76, and two parts [of] lot 12, square 56, as derived from the deed of B. Mackall, Sr., to Hill, and lot 15, square 41, and sublots 2, 3, 4 and 5, square 43, as derived from the deed of Louis Brand to Hill, which two deeds of B. Mackall, Sr., are declared to be void, but a cloud upon the property; and that complainant, though not having the legal title, but being equitably entitled thereto, was entitled to have such deeds with all subsequent claims of title decreed null and void. Complainant further stated that some of the reasons for the delay which had occurred in his not before having filed a bill to set aside the said conveyances were as follows:

"As to Casilear, he at all times has protested against his claim, notifying him at the time of his purchase that he should not submit to the sale, and he has since then been engaged in negotiations from time to time with him, orally and by mutual correspondence in writing, which he has hoped would result in a settlement and adjustment of their differences in regard to the property held by him. He has received large amounts by way of rents and profits of said property and has made no substantial improvements thereon.

"As to the remainder of such property, he says that soon after the execution of the deeds made in 1874 the said B. Mackall, Sr., became reconciled to complainant, they living together and sharing the benefit of all property possessed by each in common. He said B. Mackall, Sr., constantly assured complainant that he would rectify all that was wrong in said conveyances to the best of his ability, which assurance was relied upon by complainant and was satisfactory to him.

"Said B. Mackall, Sr., drew up forms of reconveyance to complainant of such property or parts thereof, one of which he signed and delivered to complainant, and which are now in possession of complainant.

"In Feb'y, 1880, he did execute a reconveyance of all his interests in said property, which was entirely satisfactory to

the complainant, though such reconveyance was attacked by his said brothers and sisters, and a decree was made adjudging the same to be void as to the property herein claimed by complainant, from which decree, however, they claim to have taken an appeal to the Supreme Court of the United States, and which appeal they claim is now pending, though such claim is not admitted by complainant. While such litigation was pending, however, there was, as believed by complainant, no propriety in bringing suit to enforce what he claimed to have been sufficiently performed by the execution of said deed of his father's to him of Feb'y 28th, 1880, and such litigation was pending at a very recent date."

Complainant prayed process and that the defendants might answer the bill under oath; that the two deeds of B. Mackall, Sr., trustee, and Brand, trustee, to Hill be adjudged and decreed to be null and void, together with all deeds, etc., under the same; that complainant be adjudged to be the owner of the property free and clear of all claims and demands of the defendants, and entitled to an account; and that an account be taken and for general relief.

To this bill the defendants Casilear and wife demurred upon the ground of multifariousness, laches and want of equity, and the other defendants also demurred upon the ground of prior decree, multifariousness, etc. The latter demurrer was sustained January 19, 1886, and the bill dismissed. On the 28th day of January it was stipulated on behalf of the Casilears that the bill might be considered as amended by adding the averments: "That the complainant had no knowledge of the sales to Hill or either of them at the time of the conveyance to McKelden and McB. Timoney;" that "the fair value of the property sold by McKelden and McB. Timoney, trustees, to Casilear was $7500;" and that "Brooke Mackall, Sr., left complainant only one dollar by his will, giving all the rest of his estate to his other children," etc. The demurrer on behalf of the Casilears was then sustained and the bill dismissed. The cause was taken from the special to the general term of the court and the decree of the special term affirmed. Thereupon an appeal was taken to this court.

*Mr. Samuel Shellabarger,* (with whom was *Mr. Jeremiah M. Wilson* on the brief,) for appellant, cited: (1) as to the insufficiency of the acknowledgment of the deed from Mackall, Jr., to Mackall, Sr., and the invalidity of the deed by reason of want of acknowledgment and record — *West* v. *Krebaum,* 88 Illinois, 263 ; *Davis* v. *Beazeley,* 75 Virginia, 491 ; *Hammers* v. *Dole,* 61 Illinois, 307 ; *Groesbeck* v. *Seeley,* 13 Michigan, 329 ; *Withers* v. *Baird,* 7 Watts, 227 ; *S. C.* 32 Am. Dec. 754 ; *Wilson* v. *Traer,* 20 Iowa, 231 ; *Goodhue* v. *Berrien,* 2 Sandford Ch. 630 ; *Brown* v. *Moore,* 38 Texas, 645 ; *Stevens* v. *Hampton,* 46 Missouri, 404 ; *Beaman* v. *Whitney,* 20 Maine, 413 ; *Wasson* v. *Connor,* 54 Mississippi, 351 ; *Bowers* v. *Bowers,* 29 Grattan, 697 ; *Van Ness* v. *United States Bank,* 13 Pet. 17 ; *Schultz* v. *Moore,* 1 McLean, 520 ; *Greenleaf* v. *Birth,* 6 Pet. 302 ; *Scott* v. *Reed,* 10 Pet. 524 ; *Wood* v. *Owings,* 1 Cranch, 239 : and (2) as to laches — 2 Story Eq. Jur. § 1520 and cases cited : *Hill* v. *Law,* 102 U. S. 461 ; *Clarke* v. *Boorman,* 18 Wall. 493, 505 ; *Michoud* v. *Girod,* 4 How. 503 ; *Wagner* v. *Baird,* 7 How. 234 ; *Godden* v. *Kimmell,* 99 U. S. 201 ; *Prevost* v. *Gratz,* 6 Wheat. 481 ; *Bryan* v. *Kales,* 134 U. S. 126.

*Mr. J. J. Darlington,* for Casilear and wife, appellees, cited as to laches: *Elmendorf* v. *Taylor,* 10 Wheat. 152 ; *Cholmondeley* v. *Clinton,* 2 Jac. & Walk. 1 ; *Miller* v. *McIntyre,* 6 Pet. 61 ; *Hovenden* v. *Annersley,* 2 Sch. & Lef. 633 ; *Piatt* v. *Vattier,* 9 Pet. 405 ; *McKnight* v. *Taylor,* 1 How. 161 ; *Lewis* v. *Baird,* 3 McLean, 82 ; *Maxwell* v. *Kennedy,* 8 How. 210 ; *Landsdale* v. *Smith,* 106 U. S. 391 ; *Sullivan* v. *Portland &c. Railroad,* 94 U. S. 806 ; *Godden* v. *Kimmell,* 99 U. S. 201 ; *Jenkins* v. *Pye,* 12 Pet. 241 ; *Brown* v. *Buena Vista County,* 95 U. S. 157 ; *Harwood* v. *Railroad Co.,* 17 Wall. 78 ; *Hayward* v. *National Bank,* 96 U. S. 611 ; *Richards* v. *Mackall,* 124 U. S. 183 ; *Roberts* v. *Tunstall,* 4 Hare, 257 ; *Hunt* v. *Ellison,* 32 Alabama, 173 ; *Hamlin* v. *Mebane,* 1 Jones Eq. 18 ; *Sullivan* v. *Portland & Kennebec Railroad,* 4 Cliff. 212 ; *Graham* v. *Boston, Hartford &c. Railroad,* 14 Fed. Rep. 753 ; *Speidell* v. *Henrici,* 15 Fed. Rep. 753.

*Mr. S. S. Henkle* for devisees of Brooke Mackall, Senior, appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Apart from the prayers for process, an account, and for general relief, the specific relief sought is, that the two deeds of B. Mackall, Sr., trustee, and Louis Brand, trustee, to Joseph B. Hill be decreed to be null and void, together with all deeds, written instruments, and claims of title whatever derived through the same, and that complainant be adjudged to be the owner of the property free and clear from all claims and demands of the defendants or either of them.

The deed of complainant to Mackall, Senior, was dated May 5, 1866, and recorded June 5, 1867. The deed of Mackall to Hill was dated June 26, and recorded July 2, 1873. Brand's title was derived through a conveyance by complainant to Morsell, dated March 13, 1867, and the conveyance of Morsell, Mills and complainant to him, dated July 14, 1868. The deed from Brand to Hill was dated and acknowledged July 29, 1873, and presumably recorded the same day, though the record gives the date as July 28. The bill was filed June 1, 1885. The death of Mackall, Sr., was stated to have occurred February 28, 1880. This attack was delivered, then, more than nineteen years after the deed to Mackall; about seventeen after that to Brand; and nearly twelve years after the other two deeds were recorded.

It is charged that the deed of May 5, 1866, was given to secure complainant's two notes, amounting to nearly $600 in the aggregate, for the purpose of borrowing money for the use of father and son, but that no money was ever borrowed thereon; and that the deed to Brand was given to secure a note for $2000 payable to Mackall, Sr., for the same purpose, likewise not carried out.

Counsel for complainant insisted, upon the argument, that the deed from Mackall, Jr. to Mackall, Sr., was void, because Mackall, Sr., took the acknowledgment, and that the sales made by Brand and Mackall, Sr., to Hill were invalid by reason of the omission to advertise for the time prescribed, and the want of publicity in the conduct of the sales, and because

these transactions were merely covers for the purchase by Mackall himself in fraud of complainant's rights.

If the general rule that an acknowledgment is not essential to the validity of a deed as between the parties applies, the fact that a grantee cannot take the acknowledgment of a conveyance to himself would be immaterial in this case. The execution of this deed to Mackall was expressly averred by complainant and its delivery conceded, but he alleged that it was given to secure notes for the purpose of borrowing money for himself and his father, and that this was not done.

There is no prayer for specific relief in relation to it, nor do we think the averments such as would entitle complainant to resort to the prayer for general relief, to set it aside, by reason of the want of acknowledgment, if that were a proper ground; and, if void upon its face, as now contended, the interference of a court of equity would seem to be unnecessary. *Phelps* v. *Harris*, 101 U. S. 370, 375. We shall not, therefore, review the various statutes of Maryland, acts of Congress, and authorities referred to by counsel as tending to justify the position that in the District of Columbia a deed is not operative, even as between the parties, notwithstanding delivery, unless it be acknowledged and recorded.

As already stated, nineteen years after the conveyance to Mackall, Sr., seventeen after that to Brand, twelve after the deeds to Hill, and five after Mackall's death, the son charges the father with what his counsel calls "actual, active and intense fraud;" and, in explanation of the delay in seeking to be relieved from the consequences of this conduct on his father's part, says that "soon after the execution of the deeds made in 1874," (the conveyances by Hill and Mackall, Sr., to Leonard Mackall, and by McKelden and Timoney to Casilear, were in 1874,) his father became reconciled to him, and they lived together and shared the benefit of all property possessed by each in common, and his father constantly assured him that he would rectify all that was wrong in said conveyances to the best of his ability, which assurance was relied upon by complainant and was satisfactory to him; that his father drew up forms of reconveyance to him of such property

or parts thereof, one of which he signed and delivered to complainant; and that "in February, 1880, he did execute a reconveyance of all his interests in said property, which was entirely satisfactory to complainant, though such reconveyance was attacked by his said brothers and sisters, and a decree was made adjudging the same to be void as to the property herein claimed by complainant, from which decree, however, they claim to have taken an appeal to the Supreme Court of the United States, and which appeal they claim is now pending, though such claim is not admitted by complainant. While such litigation was pending, however, there was, as believed by complainant, no propriety in bringing suit to enforce what he claimed to have been sufficiently performed by the execution of said deed of his father's to him of February 28, 1880, and such litigation was pending at a very recent date."

As complainant did not appeal from the decree passed against him in favor of his brothers and sisters in relation to this property, it must still stand as a bar, and it is not easy to see why, under the circumstances stated by complainant, that litigation did not include the same matters and things which are drawn in controversy in this suit.

Supposing that the bill of the complainant's brothers and sisters attacked the deed of February 28, 1880, upon the ground that its execution was secured by undue influence, would it not devolve upon the defendant in that case, the complainant herein, to set up that he was in fact the owner of the property; that his father had obtained the conveyance from him under circumstances constituting a fraud upon him; and that the deed of February, 1880, was given by the deceased in order to restore to the defendant, complainant here, what he had been wrongfully deprived of? And as complainant contends such were the facts, why was not that defence set up? If such were not the facts, what becomes of the complainant's bill?

But assuming that the matters relied on here are not necessarily inconsistent with that decree, then according to his own contention complainant occupies this position: having accepted

a deed from his father completely condoning the causes of complaint which he alleges he had against him, he now, after his father's death, seeks to go behind that final and satisfactory compromise, because upon some ground, outside of anything litigated in this suit, his brothers and sisters succeeded in defeating the deed in a controversy between him and them. This we think he cannot do; nor can we admit complainant's ideas of propriety in bringing this bill, while that was pending, or in declining to litigate these matters in that action, as furnishing any satisfactory explanation of the laches which has characterized his conduct. If that laches could in any respect be held to be excused by reason of his expectations from his father, we cannot allow him to plead, that because those expectations in part failed of realization through some external cause, therefore he is any the less bound, so far as his dead father is concerned, by a delay which would otherwise be fatal.

The doctrine of laches is based upon grounds of public policy, which require for the peace of society the discouragement of stale demands. And where the difficulty of doing entire justice by reason of the death of the principal witness or witnesses, or from the original transactions having become obscured by time, is attributable to gross negligence or deliberate delay, a court of equity will not aid a party whose application is thus destitute of conscience, good faith and reasonable diligence. *Jenkins* v. *Pye,* 12 Pet. 241; *McKnight* v. *Taylor,* 1 How. 161, 168; *Godden* v. *Kimmell,* 99 U. S. 201; *Landsdale* v. *Smith,* 106 U. S. 391; *Le Gendre* v. *Byrnes,* 44 N. J. Eq. 372; *Wilkinson* v. *Sherman,* 45 N. J. Eq. 413.

The time for this son to have attacked his father on the ground of fraud was prior to that father's death; yet no movement was made to set aside these alleged fraudulent conveyances, until five years after that event transpired. The father died testate, and by his will the property in controversy, subject to the Casilear conveyances, passed to the brothers and sisters of complainant, as the father's devisees, who were natural objects of the bounty of the testator, and, so far as this record shows, entitled to his consideration. The allega-

tions of the bill fall far short of discharging the burden, which rested on the complainant, of satisfying the court that his delay had not operated to the prejudice of these parties.

Without regard to the deed of February, 1880, the rule in question would forbid relief, and, so far as that deed is concerned, complainant could not elect to take under it and then claim that delay was excused while he experimented in trying his case by piecemeal. Of course it must be admitted that an affectionate son would feel a natural reluctance to make a charge of fraud against his father, but where the time consumed in overcoming this is prolonged, as in this instance, we cannot recognize the relationship as sufficient explanation of the laches.

These views are applicable to the defendants Casilear. Casilear purchased at a sale under a trust deed given to secure a note for $3000, in respect to which there is no allegation that the note was not for value received. The excuse for the delay is that complainant protested against Casilear's claim and notified him that he would not submit to the sale; but the mere assertion of a claim, unaccompanied by any act to give effect to it, cannot avail to keep alive a right which would otherwise be precluded. It is said, however, that complainant had been engaged in negotiations from time to time with Casilear, orally and by mutual correspondence in writing, which complainant hoped would result in a settlement and adjustment of their differences in regard to the property held by him; but the bill does not state that Casilear gave any encouragement to such hopes, or ever promised any settlement or adjustment, or ever conceded that his purchase was in any respect doubtful, or ever in any way recognized the claims of the complainant.

Under the circumstances we entertain no doubt that the demurrers were properly sustained and the decree is

*Affirmed.*