KELLY, Appellant, vs. THE GREEN BAY, WINONA & ST. PAUL RAILWAY COMPANY, Respondent.

*October 1 — October 20, 1891.*

*Railroads: Foreclosure of land contract: Notice: Equity: Estoppel: Laches.*

In 1870 a railroad company obtained a contract for the conveyance to it of certain land for its right of way, etc. In 1871 one K., the general agent and manager of the company, whose duty it was to obtain said land for it, took a conveyance thereof in his own name. At that time the company had constructed its road, erected depot buildings, and made other improvements on the land. In 1872, and again in 1875, the company had a full settlement with K., covering moneys paid by him for its lands. Through the procurement of K. mortgages of all the property of the company, including the land in question, had been given, and afterwards, in an action to foreclose the mortgages, a receiver was appointed, and the management of the railroad was taken from K. About this time K. recorded his deed of the land in question, but remained silent when, in 1881, said land with all the other property of the company was sold under the foreclosure proceedings to the defendant. The defendant has ever since been in possession, operating the railroad on said land. In 1887 K. conveyed the premises to the plaintiff, his sister, and in 1889 she brought this action to foreclose the land contract of 1870. *Held:*

(1) The plaintiff must be deemed to have taken the legal title with notice of the defendant's equitable rights.

(2) The land having been occupied for the purposes of a railroad with the consent of K., even if he had been the rightful owner equity would not interfere, and the only remedy would have been by proceedings to have the land condemned or by action for the contract price.

(3) Independent of the statute of limitations, the plaintiff is estopped to maintain this action by the conduct and gross laches of her grantor.

APPEAL from the Circuit Court for *Outagamie* County.

It appears from the record that this action was brought to foreclose a land contract executed by B. C. Thompson to the Green Bay & Lake Pepin Railroad Company, June 7,

1870, upon the lands therein described, to be occupied, and which were in fact occupied, by the said last named company, and the defendant as its successor, for depot grounds, right of way, etc., and which contract was in consideration of $500, to be paid within two years from the date thereof, and was recorded November 16, 1870; that November 16, 1871, the said B. C. Thompson and wife, by warranty deed, conveyed said lands to one D. M. Kelly, which deed recited a consideration of $500, and was recorded December 16, 1877; that September 15, 1887, D. M. Kelly and wife, by warranty deed, conveyed the same premises to the plaintiff, which deed recited a consideration of $500, and was recorded October 12, 1887, and under which deeds the plaintiff claims title to said lands. The complaint alleges the facts mentioned, and also that no part of the purchase price named in said contract had ever been paid, and prayed for judgment foreclosing the same and barring the defendant therefrom.

The answer in effect admits the making of said contract and the giving of said deeds, but alleges that the deeds were fraudulent as against the defendant and its predecessor, and claims that the true consideration for the contract was the location of the depot on said lands. The answer also denies that the purchase price named in the contract had not been paid, and alleges, in effect, that it had been paid in full; that at the time the contract was made, and long prior thereto, and until April, 1874, the said D. M. Kelly was the general manager and trustee of the company, intrusted with its moneys and resources, and that, as such trustee, he was required to obtain said land for the right of way, etc., in the name of the company, but that, conspiring with one Ketchum, he paid for said lands out of the money of the company, and took the title in his own name; that he was vice-president and general manager of the company; that about August 1, 1870, by his request and procurement,

Kelly vs. The Green Bay, Winona & St. Paul R. Co.

a mortgage was given on all the property of the company to secure the payment of upwards of $3,000,000, and that, in September, 1873, a second mortgage was given thereon for upwards of $2,000,000; that said mortgages were afterwards foreclosed, and in August, 1881, the property covered thereby was deeded to the defendant, upon due consideration paid.

The answer admits the occupation of the premises in suit by the defendant and its predecessor, and alleges that Kelly never claimed to own said lands, nor to be reimbursed for any sum paid by him therefor, although he had subsequent settlements with said company; that the conveyance by him to the plaintiff was without consideration, and to defraud his creditors; that if he ever paid the $500 mentioned in the deed to him from Thompson, or any part thereof, from his own funds, the same were in effect repaid to him by the company; that the said D. M. Kelly and the plaintiff have held said legal title in trust for the defendant, and that if any cause of action therefor accrued it was more than six years and more than ten years before the commencement of this action.

Substantially the same facts are also set up as a counterclaim, and the relief prayed for is that the plaintiff be required to convey said land to the defendant, and for costs. The plaintiff replied to such counterclaim.

Among the evidence in the record is an agreement between the said D. M. Kelly and the Green Bay & Lake Pepin Railroad Company, executed July 23, 1870, whereby said Kelly covenanted, promised, and agreed to engage in the service of the said company as its general agent and manager for all and singular the purposes therein set forth, to arrange and negotiate for the construction and completion of its railway, and to use his utmost skill, judgment, and endeavors to promote, secure, and effect the construction and completion of said railway to the Mississippi river,

at a reasonably early date; that June 5, 1871, the same parties entered into a modified form of the same agreement, and February 12, 1872, the same parties entered into a modified form of said last two contracts, whereby the said D. M. Kelly was made the chief financial and construction agent of said company, and to perform the duties usually performed by a superintendent or general manager thereof, and to the best of his ability to labor and endeavor in the building of said railroad, and in and by which said contract the said company agreed to assume and pay all indebtedness and liabilities theretofore incurred by said D. M. Kelly in and about the construction and equipment of said railroad, and to pay all his expenditures made and incurred, out of or with his private means, in or about the service of said company, and for his services.

At the close of the trial the court found, as matters of fact, that each and every allegation contained in said answer was true; and as conclusions of law the court found that no part of the purchase price of the land in question under the land contract mentioned was ever payable; that the plaintiff was estopped to claim any interest in or lien on said lands, or any right or interest under said contract; that the plaintiff was barred from any relief herein by the statutes of limitation and the laches of herself and her grantor; and that the defendant was entitled to judgment for the relief demanded in the answer, with costs. From the judgment entered thereon accordingly, the plaintiff appeals.

For the appellant there was a brief by *John Goodland*, and oral argument by *H. D. Ryan.*

For the respondent there was a brief by *Greene & Vroman*, and oral argument by *Geo. G. Greene.* They argued, among other things, that if Kelly paid for the land in question with his own money, so as ever to have had a right to reimbursement, the lapse of eighteen years without any claim

of repayment, or the payment of any interest, raises a strong presumption that he has been repaid.· *Jackson v. Pratt,* 10 Johns. 381; *Buckmaster v. Kelly,* 15 Fla. 180; 2 Jones, Mortg. sec. 916; Wood's Practice Evi. 216, 217; *Briggs' Appeal,* 93 Pa. St. 485; Wood, Lim. 459; *Gould v. White,* 26 N. H. 178. The settlements between Kelly and the company in 1872 and 1875 are conclusive, unless impeached for fraud or mistake, that every claim he had against the company was settled or paid. *Freeman v. Bolzell,* 63 Wis. 378; *Orr v. Le Clair,* 55 id. 95; *Miller v. Chippewa Co.* 58 id. 630; *Klauber v. Wright,* 52 id. 303; *Martin v. Beckwith,* 4 id. 219; *Cobb v. Arundell,* 26 id. 553. They cannot be impeached ·for any claim of which he was conscious when he settled. *Quinlan v. Keizer,* 66 Mo. 603. After such delay they cannot be-impeached for any cause. *Leather M. Bank v. Morgan,* 117 U. S. 96; *Lockwood v. Thorne,* 11 N. Y. 170; *Augsburg v. Flower,* 68 id. 619. Kelly was estopped from claiming the land by his conduct in negotiating mortgages upon it, turning the possession over to the receiver, and remaining silent when the property was sold and deeded to the defendant on foreclosure.· *Kirk v. Hamilton,* 102 U. S. 68; *Anderson v. Coburn,* 27 Wis. 558; 2 Herman, Estoppel, secs. 915, 917; *Leather M. Bank v. Morgan,* 117 U. S. 96. The plaintiff is bound by any estoppel of Kelly. The defendant's possession was notice to her of its equitable rights. As the " general agent and manager " and "chief financial agent " of the company, with exclusive power to contract for it, Kelly could ·not take the title to himself. Hilliard, Vendors, 386, 387; *Gardner v. Ogden,* 22 N. Y. 327; *Roller v. Spilmore,* 13 Wis. 26; 1 L. C. in Eq. 262; 1 Perry, Trusts, 206; *Seichrist's Appeal,* 66 Pa. St. 237; *Cook v. Berlin W. M. Co.* 43 Wis. 433; *O'Dell v. Rogers,* 44 id. 136; R. S. sec. 2077. The deed to Kelly must therefore be deemed a performance of the contract by the vendor, and if Kelly paid his own money, he

had, at most, a claim as trustee for reimbursement. An action at law on such claim was barred after six years, and an action in equity after ten years. Relief in equity is precluded also by the laches of the plaintiff and her grantor. *Wagner v. Baird,* 7 How. 234; *Sheldon v. Rockwell,* 9 Wis. 166, 181; Hilliard, Vendors, 181, note; Pomeroy, Spec. Perf. secs. 402, 403, 406, 408; *Coon v. Seymour,* 71 Wis. 345; *Sable v. Maloney,* 48 id. 331; *Barber v. Rukeyser,* 39 id. 595; *Millar v. Jacobson,* 69 id. 363; *Hayward v. National Bank,* 96 U. S. 611; *Hume v. Beale's Ex'x,* 17 Wall. 336; *Godden v. Kimmell,* 99 U. S. 201; *Young v. Young,* 45 N. J. Eq. 27.

CASSODAY, J.   This being an equitable action, tried wholly by the court, the errors assigned by reason of the alleged admission of incompetent, irrelevant, and immaterial evidence, are unavailable, and require no consideration. The court found that each and every allegation of the answer was true. This finding seems to be sustained by the evidence. The very object of the contract of June 7, 1870, between Thompson and the railway company, was to procure the lands therein described for road-bed, depot, and other purposes. It was the duty of Kelly, as agent, superintendent, and general manager of the company, and as financial agent and manager of its funds, to procure and perfect such title, under and according to the terms of that contract, within two years from the date thereof, as therein required. He did obtain from Thompson a warranty deed of the same to himself within the two years therein named, reciting the same consideration as that mentioned in the contract. That deed was witnessed by and acknowledged before the president of the company. At that time the road had been finished to New London, upon and across the land in question, and depot buildings and improvements had been made thereon of the value of $20,000. Kelly negotiated the bonds and mortgages upon all the property of

the company, including the lands in question, as mentioned in the foregoing statement. It appears that the company had a full settlement with Kelly in 1872, at his request, and such settlement included moneys paid by him for rights of way. A similar settlement was made with him by the company in 1875. Kelly did not record his deed from Thompson until December 15, 1877, being about the time he was ejected from the management of the road, and the mortgagees took possession under the mortgages, and a receiver thereof was appointed. Kelly appears to have remained silent when the property of the company, including the premises in question, was sold and deeded to the defendant. In answer to a bill in equity filed in the federal court in 1879, Mr. Kelly in effect admitted that he had taken the title to rights of way and depot grounds in his own name; and that he either had conveyed or was willing to convey the same to the company.

The defendant and its predecessor having been in possession for so many years, and made the improvements mentioned, the plaintiff must be deemed to have taken the legal title with notice of its equitable rights. *State v. Wertzel*, 62 Wis. 184; *Martin v. Morris*, 62 Wis. 418; *Meade v. Gilfoyle*, 64 Wis. 18. Mr. Kelly did not convey the premises to his sister, the plaintiff, until September 15, 1887; and she did not commence this action until January 29, 1889, more than eighteen years after the execution of the contract here sought to be foreclosed, and more than seventeen years after Kelly thus obtained the deed from Thompson, and nearly seventeen years after the consideration therein expressed became due and payable. Even had Kelly bought the land for himself, and paid for it with his own money, and had brought such action at the time of recording his deed, yet upon the facts stated the case would seem to come squarely within the principle that " if the owner of lands, by express or tacit consent, permits a railroad com-

pany to enter thereon, construct its road-bed and track, and occupy the same for the purposes of a railroad, he thereby waives and loses his remedy by injunction or action for the trespass, and is relegated to proceedings to have his compensation and damages assessed." *Mil. & N. R. Co. v. Strange,* 63 Wis. 178; *Taylor v. C., M. & St. P. R. Co.* 63 Wis. 327; *Walton v. G. B., W. & St. P. R. Co.* 70 Wis. 419; *Cassidy v. C. & N. W. R. Co.* 70 Wis. 440. In such cases equity will not interfere, but the party is driven to the remedy given by statute, or, in a case like this, to an action for the contract price. Certainly such equitable action cannot be maintained after such legal right of action has been barred by the statutes of limitation, as here. But independent of that proposition, we are constrained to hold that the plaintiff is estopped from maintaining this equitable action, by reason of the conduct and gross laches of her grantor. "The court lends its aid," said Dixon, C. J., upon a careful consideration of the authorities, "only to the vigilant, active, and faithful. This tardy application must be regarded as made in bad faith. After his gross and unparalleled negligence, the plaintiff can have no standing in court for the purpose of asking the relief here sought. Unreasonable delay and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity." *Sheldon v. Rockwell,* 9 Wis. 181. Here there is much more than mere delay or gross laches, and in such cases, and independently of the statutes of limitation, a court of equity will, on its own motion, refuse relief, even without such laches having been pleaded. *Coon v. Seymour,* 71 Wis. 345, 346, and cases there cited; *Landsdale v. Smith,* 106 U. S. 391; *Speidel v. Henrici,* 120 U. S. 387; *Mackall v. Casilear,* 137 U. S. 556; *Saunderson v. Ballance,* 67 Am. Dec. 218.

*By the Court.*— The judgment of the circuit court is affirmed.