No. 3899

Second Circuit

FOX v. CITY OF MONROE

(December 23, 1930. Opinion and Decree.)

Newton & Newton, of Monroe, attorneys for plaintiff, appellant.

H. H. Russell, of Monroe, attorney for defendant, appellee.

ODOM, J. On April 15, 1920, plaintiff was appointed registrar of vital statistics for the parish of Ouachita, which includes the city of Monroe, and held that position continuously from that date up to the date of the trial of this case in March, 1930. As compensation for his services as such he was entitled to a fee of 25 cents for each birth and each death reported, to be paid by the police jury of the municipality upon the warrant of the president and secretary of the board of health for the state, as provided by Act No. 60 of 1914, page 151.

From August 20, 1920, to August 20, 1929, twenty-eight warrants aggregating $1,744.50, were drawn by the state board of health on the treasurer of the city of Monroe in favor of plaintiff. None of the warrants were paid by the city, and the present suit is to collect them.

The city's defense is that during the entire period from the date on which the first warrant was issued to the date of the last one, plaintiff was employed by it as secretary of the city board of health and sanitary officer for the city of Monroe and was by the city paid a monthly salary of $185 for his services, which included the work he was required to do under his employment as registrar of vital statistics; that plaintiff was informed that the person holding the office or position of secretary of the city board of health and sanitary officer and receiving the salary of that position would be required to perform the duties of local registrar of vital statistics for the city without the payment by it of any sums other than the salary; and that plaintiff acceded thereto by accepting the position and salary without pressing his demands for payment of these warrants and that he thereby waived whatever rights he may have had under the law to collect them. Plaintiff appealed from a judgment rejecting his demands.

## OPINION

The warrants now sought to be enforced against the municipality are for plaintiff's services in reporting births and deaths which took place within the city, and it is not denied that under Act No. 60 of 1914, it was the duty of the municipality to pay them and that upon its refusal the state board of health could have compelled payment of them by mandamus or other summary process, nor is it denied that the holder of the warrants could have at any time enforced their payment by personal action against the city had he not waived his rights to collect them.

But the city resists the action and sets up the defense that plaintiff waived his right to collect from it the fees due him as registrar of vital statistics, and in effect pleads that he has already been paid by it for such services. The trial judge held that the city's defense was good, and under the facts disclosed we must sustain his ruling.

The first of the warrants held by plaintiff and filed in evidence was issued to him on August 20, 1920, for the second quarter of that year and one like it, except in amount, at the end of each quarter there-

after until August 20, 1929, so that the warrants sued on are for plaintiff's services as registrar of vital statistics for a period of exactly nine years and three months.

These warrants were due and payable by the city upon presentation and demand, and plaintiff knew that, and he knew further what his remedy was when the city refused to pay. The first of the warrants was more than nine years and the last one two months overdue when this suit was filed. Yet there is no testimony that plaintiff, during that period of nine years, ever pressed these claims against the city. He was not at any time during that period ignorant of his rights and remedy, nor was he in any sense incapacitated to press his claims.

But the facts are that during all that time and longer he was an officer or an employee of the city at a monthly salary of $185, and that he knew that the city officials expected him to render the service as registrar of vital statistics for the city as part of his duties as secretary of the city board of health and sanitary officer and that the salary paid him by the city each month was intended to be full compensation for all his services, and his conduct shows that he accepted it as such. It was explained to him, not once, but on numerous occasions, by the city attorney, that the emoluments of his office as secretary of the city board of health and sanitary officer were intended to cover all services to the city, including those connected with the bureau of vital statistics for which these warrants were issued. He held to his position with the city and accepted the salary paid him by it with full knowledge and understanding of that fact. He resigned his position with the city on September 1, 1929, and filed this suit on No-

vember 12, following, and never until then did he press these claims for collection.

At various times during the period over which these warrants were issued to him, plaintiff mentioned the matter of their payment to the city attorney, who upon each occasion informed him that the city did not pay them for the reason above stated. But plaintiff did not at any time during the period of his employment by the city insist upon their payment, but apparently acceded to the city's demand that he do this work in connection with his other duties for which he was paid a salary. Plaintiff testified that he knew if he pushed these claims for collection, he would be discharged. He said:

"I know I would lose my job if I insisted on the payment of them and they were too small to lose a job over."

Plaintiff, therefore, deliberately and intentionally chose the benefit of the salary paid by the city instead of that which arose under the warrants. He knew he could not claim both and with full understanding of his legal rights he made his choice. He cannot now, after making a deliberate choice of the greater benefit of the salary and accepting it through all those years, be permitted to enforce this stale demand against the city.

A "waiver" is an election by one to dispense with something of value or to forego an advantage he might have taken or insisted upon, or the giving up or surrendering of some known right.

From Bouvier's Law Dictionary, Rawle's Third Revision, we quote the following found under the heading "Waiver":

"The relinquishment or refusal to accept of a right. * * * The intentional relinquishment of a known right. * * * In

practice it is required of every one to take advantage of his rights at a proper time; and neglecting to do so will be considered as a waiver." Browning v. Smith, 139 Ind. 280, 37 N. E. 540.

Many authorities are cited under the following statement found in 8 Words and Phrases, First Series, page 7376:

"Bishop, in his work on Contracts (section 792), defines waiver as 'where one in possession of any right, whether conferred by law or by contract, and a full knowledge of the material facts, does or forbears the doing of something inconsistent with the exercise of his right or of his intention to rely on it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards. * * *

"A waiver implies the idea that one has a right, and, with knowledge of his rights and that which might defeat his rights, does an act by which he waives the right to stand upon his legal position or his legal right." Citing Hollings v. Bankers' Union of the World, 63 S. C. 192, 41 S. E. 90.

"Waiver" is a voluntary act and involves the idea of assent and intention. Plaintiff voluntarily abandoned these claims against the city during the period of his employment and acceded to the city's refusal to pay them. His intention to do so is manifest from his conduct.

He abandoned his rights under these warrants for prudential reasons. He knew if he insisted upon their payment he would lose his position, and the salary which the city was paying him. Prudence and discretion prompted the course which he took.

"Where a person refrains from asserting his rights for prudential reasons he is entitled to less favorable consideration than if his conduct has been that of mere inaction." 10 R. C. L. 402.

See Thorn Wire Hedge Co. v. Washburn & Moen Manufg. Co., 159 U. S. 423, 16 S. Ct. 94, 40 L. Ed. 205.

Plaintiff seems to have entertained some remote, lingering hope that the city would finally honor and pay these warrants, but he took no active steps to enforce them. Even if he had constantly and regularly asserted his rights, that would not avail him anything due to his conduct and long inaction. Mackall v. Casilear, 137 U. S. 556, 11 S. Ct. 178, 34 L. Ed. 776.

Counsel for appellant in brief says that plaintiff's claim is equitable, in that he earned the amount through service, and he quotes article 21 of the Civil Code, which provides that:

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity."

But we find no room for the application of the equity rule in plaintiff's favor. On the contrary, we think it would be inequitable to permit him to enforce this belated and stale demand. If he had pressed his demand or manifested an intention to do so at any time during all the nine years he was reaping the benefits of the salary paid him by the city, it could have protected itself either by discharging him or by reducing his salary to an amount which added to these quarterly payments would be what it considered adequate compensation for what he was doing.

Equity demands that a man speak when it is time and his duty to speak. No one is permitted to remain silent when it is his duty to speak and thereby lead his adversary into a trap. The rule is that, "He who asks equity must do equity."

For the reasons assigned, the judgment appealed from is affirmed, with all costs.