## CARTER OIL CO. v. KENNEDY.

No. 19007.   Opinion Filed June 18, 1929.

Walter Davison and S. J. Montgomery, for plaintiff in error.

Gray & Palmer, for defendant in error.

ANDREWS, J. The plaintiff in error was defendant and the defendant in error was the plaintiff in the trial court, and the parties hereto will be referred to as they appeared therein.

The plaintiff instituted a suit in the district court of Osage county against the defendant, alleging that the defendant, without the consent or permission of the plaintiff, had "* * * wrongfully and unlawfully entered upon and taken possession of said above-described land and has wrongfully and unlawfully laid pipe lines, made roads and buildings, tanks, fences, houses, buildings, boiler house, pump houses, laid pipe lines and has committed various and sundry trespasses upon the above-described land of the plaintiff, * * *" and has thereby rendered the same "valueless to the plaintiff," and that the wrongful and unlawful trespasses and occupation of the land will permanently continue, all to the damage of the plaintiff in the sum of $2,900.

The defendant answered with a general denial, and in addition thereto alleged that the land involved in the action is a part of the Osage Indian Reservation set aside to the Osage Indians by act of Congress, and that the oil and gas in and under the land is the property of the Osage Indians and that the defendant had purchased the oil and gas mining lease hereinabove referred to; that the rights, if any, of the plaintiff in the land are confined to the surface thereof and are subject to the rights of the Osage Tribe of Indians, and that the rights of this defendant under the oil and gas mining lease to occupy the surface of the land is superior and paramount to the plaintiff's rights; that the defendant has entered upon the land, drilled wells thereon, and produced oil therefrom; that in the prosecution of the drilling and operation of the wells it is necessary to lay and maintain pipe lines, tanks, boiler houses and pump houses, to construct roads for ingress and egress, and to maintain buildings for the accommodation of the employees, all of which was done; that under the oil and gas mining lease and the regulations of the Department of the Interior the surface owner of the land shall be compensated for such damage as is done thereto by reason of the oil and gas operations thereon, and that payment has been duly made of the compensation for the well locations and tendered for the other compensation, and that the damage, if any, is not permanent, but will diminish from year to year and will finally cease.

To this answer the plaintiff filed a reply which constituted a general denial and an admission of the execution of the oil and gas mining lease, and it was therein alleged that the lease gave the defendant no authority or control over the land, and that neither the Osage Tribe of Indians nor the Secretary of the Interior could give the defendant any right to enter upon the premises without first adequately compensating the plaintiff, and that neither the Osage Tribe of Indians nor the Secretary of the Interior had any right or authority to regulate the compensation or damage to be paid

by reason of the operations of the defendant upon the land, and "* * * that the use of the land operated by the defendant to the defendant's use as set out in plaintiff's petition is and was reasonably worth the sum of $2,900," and that the defendant has refused "to settle with the plaintiff and has refused to pay for the use of the land operated by the defendant. * * *"

It is contended by the defendant that this reply constituted a departure from the allegations of the petition. It is unnecessary for this court to settle that question. The reply was filed on February 14, 1927. No motion to strike the same was filed. On the date of the trial, June 8, 1927, plaintiff was given leave to amend the petition by interlineation instanter without prejudice to trial, and the same was done. There was no objection thereto. The defendant was given permission to amend its answer, and the same was done. Thereafter the plaintiff was given permission to refile his reply, which was done. There was no objection thereto. Immediately thereafter both parties announced ready for trial. After a jury had been impaneled and sworn, defendant moved to strike a part of the reply as being a departure. The motion was overruled and the trial proceeded. There was no motion to strike the reply as a whole and no application for continuance. The error, if any, was thereby waived. Stuart v. Grayson, 65 Okla. 58, 162 Pac. 956; Bly et al. v. Pool et al., 60 Okla. 77, 159 Pac. 511.

Under the Act of Congress, chapter 120. 66th Congress, which, by reference, is made a part of the deed of plaintiff and the lease of defendant, the owner of the surface of the land had the right to appeal to a court to determine the amount of compensation as provided by the act. Under the lease the amount of compensation for the one and one-half acre well locations was fixed at $100 each, and as to compensation for the use of the surface other than that included in the location of the tank sites. damages to growing crops, damages to improvements on the land, and other damages occasioned by reason of operation, the surface owner had a right to appeal to a court, but there is no provision in the lease authorizing an appeal to the courts as to the amount of compensation for the well locations or tank sites. To that extent the lease provisions are contrary to the provisions of the act of Congress unless under the provisions of the act of Congress the provisions of the lease are authorized under the authority given the Secretary of the Interior. In view of the fact that the plaintiff has accepted the compensation for the well locations under the provisions of the lease, it is not necessary for this court to determine, and this court does not determine, whether or not the Secretary of the Interior has authority to fix the compensation for well locations. In accepting compensation under the terms of the lease the plaintiff is estopped to deny the authority of the Secretary of the Interior to fix the compensation for well locations and is bound by that provision of the lease. Jones v. S. H. Kress & Co., 54 Okla. 194, 153 Pac. 655.

That leaves for consideration only the question of the amount of compensation to be paid by the defendant for the use of the remainder of the surface of the land. It is the contention of the defendant that compensation for the remainder of the surface of the land should be paid on the same basis per acre as that fixed by the Secretary of the Interior, and that defendant tendered an amount, which on that basis, is adequate. The plaintiff contends that he is not bound by the compensation as provided by the lease, either as to the well locations or as to the remainder of the property.

Under the provisions of the statute and the provisions of the lease, the amount of compensation other than for well locations and tank sites is not determined, and the trial court is authorized to hear evidence and determine the amount of the compensation therefor.

The opening statement of the plaintiff was on the theory that the value of the land had been depreciated from about $30 per acre to about $500 for the quarter.

The opening statement of the defendant was on the theory that under the provisions of the lease fixing compensation for the location sites at $100 each for one and one-half acres, the defendant was entitled to the use of the remainder of the land at the same rate of compensation, and a tender of the sum of $700 was made in payment of the additional compensation on that basis. In this statement " * * * it is admitted that damage does exist; there is no use trying to get around that, the case because we have already tendered $700 in addition to the $1,600 already paid to them, so we know that there is damage up there, and all we want to know is how much." The defendant requested instructions, among which is the following:

"You are instructed that the measure of damages in this case is the difference between the market value of this land in its original condition and its market value now

so used and so occupied by defendant company; and in this connection you are instructed that by market value it is meant the price the land would bring if offered for sale on the open market."

This was given by the court. This instruction was proper only on the theory of permanent injury to the land, and having requested the same, the defendant is bound thereby and cannot now be heard to contend that there was not permanent injury to the land.

The opening statement of the defendant, its theory throughout the trial, and its instructions requested admitted that there was damage. Its brief recites:

"* * * But for the purposes of this brief and argument, the amount arrived at by the jury was a fair approximation of the injury received by the plaintiff, and was a fair amount to grant the said plaintiff in the event that he was entitled to any damage whatsoever."

Defendant, during the trial, admitted injury, and in its brief does not question the amount of the verdict. This discloses a peculiar situation. Under those admissions there is no question raised by this appeal that can be decided in favor of the defendant.

The defendant was rightfully in possession of the land and was rightfully using the same. The plaintiff was entitled to compensation for the damage arising from that use. The plaintiff had a right to appeal to the courts to determine the amount of that compensation other than as fixed by the terms of the lease. The plaintiff could have founded his action on a theory of temporary injury or permanent injury. He elected to proceed on the theory of permanent injury. The court submitted that issue to the jury on an instruction as to permanent injury that was requested by the defendant. The jury returned a verdict, the amount of which is not questioned by the defendant. The judgment of the court fixes the amount of permanent injury to the land caused by the defendant's occupancy thereof, and that judgment is in all things affirmed.

LESTER, V. C. J., and HUNT, CLARK, RILEY, HEFNER, and CULLISON, JJ., concur.

MASON, C. J., and SWINDALL, J., absent.

Note.—See under (3) 10 R. C. L. p. 694. See "Appeal and Error," 4 C. J. §2619, p. 707, n. 11; 2846, p. 869, n. 96. "Estoppel," 21 C. J. §207, p. 1206, n. 37.