## SILURIAN OIL CO. v. ESSLEY.

No. 496.

Circuit Court of Appeals, Tenth Circuit.

Nov. 25, 1931.

Rehearing Denied Jan. 4, 1932.

Merrick A. Whipple, of Tulsa, Okl. (O. C. Essman, of Tulsa, Okl., on the brief), for appellant.

Frank T. McCoy, of Pawhuska, Okl. (Felix A. Bodovitz, of Tulsa, Okl., and John T. Craig, of Pawhuska, Okl., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

The appellee, an Osage allottee, owns 120 acres of land upon which 24 oil wells have been drilled. The land was included in the Foster lease of 1896; the appellant acquired an interest in the lease in 1909, and executed a renewal lease in 1916, and has been operating the property since. For each well drilled under the 1916 lease, the lessee paid the owner of the surface a location fee, provided for by the lease, which compensated the owner for the use of an acre and a half around each well, or so much thereof as might be necessary. It became necessary for the lessee to use parts of the surface in addition to this acre and a half, for roadways, for shackle rods which ran to the wells from a central pumping plant, and for other improvements. Shackle rods to seven wells (two of which were drilled in 1910, two in 1926, and three in 1929) spread from the pumping plant near the center of the cultivated tract of 64 acres, like the spokes of a wheel. The result is that this tract is cut up and difficult to farm, although the land actually occupied by the roads and rods is only about 2 acres.

On November 14, 1929, appellee made a claim for $18,000 damages by reason of the appropriation of the surface for these improvements, and because appellant's employees had destroyed her gates and fences, and had cut some of her growing corn. Her

claim then proceeded: "Formal demand is hereby made upon you for settlement of this claim, and in the event you fail to make settlement within the time allowed by the Rules and Regulations, that you arbitrate this controversy in the time and manner provided by the Rules and Regulations." The appellant, on November 27, rejected her claim and advised her that it would arbitrate in conformity with the Regulations of March 7, 1923, which were the only regulations then effective.

Arbitrators were appointed as provided by such regulations, and allowed appellee damages in the sum of $4,100. The appellant brought this suit to "vacate, set aside and hold for naught" the award, alleging that it is not liable for any damage, and that the award was contrary to the evidence and the law. Appellant's bill alleges that the controversy involves the construction of the statutes of March 3, 1921 (41 Stat. 1249), and of March 2, 1929 (45 Stat. 1478), and of the Regulations of March 7, 1923, and that the arbitration was had under these statutes and regulations.

It will be noted that the appellee demanded arbitration as "provided by the Rules and Regulations"; the appellant agreed to arbitrate under such rules, and specified that the rules of March 7, 1923 should govern. The bill alleges and the answer admits that the arbitration was so had. If any doubt exists as to the character of the arbitration that was had, it is set at rest by the opening paragraph of the narrative statement of the case, signed by counsel for both sides, wherein it is stated: "The foregoing cause was a bill in equity to vacate and set aside an award made and signed by three arbitrators and had under and pursuant to the Acts of Congress."

When the case was called for trial, appellant demanded that the case be tried de novo, as provided by the Act of March 2, 1929, not however requesting a jury. The trial court denied a trial de novo, but offered to hear any evidence that might be offered to show that the award was collusive or fraudulent, or that the arbitrators had acted arbitrarily. Some evidence was offered, but the trial court sustained the award. Without reviewing the evidence, we are of the opinion that, if the appellant was not entitled to a trial de novo, the trial court's decree should be affirmed. If appellant was entitled to a trial de novo—if the 1929 statute applies—the decree must be reversed. The question is not an easy one, and will require an examination of the contract and the statutes.

Both the Foster lease and the 1916 lease gave the lessee the right to use the surface as far as might be necessary for mining operations. There was no express agreement in the Foster lease for damages to the surface; the 1916 lease provided for a flat payment for location and tank sites, and that "during operations the lessee shall pay all damages for the use of the surface other than that included in the location and tank-sites. * * * If the parties are unable to agree concerning damages, the same shall be determined by arbitration."

The appellant's right to use the surface is not limited to location or tank sites, but for such additional use it must pay, for the appellee is entitled to damages for such additional use by her contract; the fact that appellant was careful and prudent in its operations is not a defense to this unqualified promise to pay. She was also entitled to arbitration by her contract; and, if she had availed herself of this contract right, the award made would have been unassailable.

The 1916 lease also provided that it should be subject to regulations thereafter prescribed by the Secretary of the Interior, with certain exceptions not here important. In 1921, Congress, in the exercise of its plenary powers over Indians and their affairs, passed the Act of March 3, 1921 (41 Stat. 1249), which provided: "That the bona fide owner or lessee of the surface of the land shall be compensated, under rules and regulations prescribed by the Secretary of the Interior in connection with oil and gas-mining operations, for any damage that shall accrue after the passage of this Act as a result of the use of such land for oil and gas mining purposes or out of damages to the land or crops thereon occasioned thereby, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him."

On March 7, 1923, the Secretary promulgated rules governing the procedure for the arbitration of the amount of such damage. For damages accruing after March 3, 1921, the appellee had a right to damages and a right to arbitrate by virtue of this statute and regulation. The surface owner or lessee had a right to appeal to the courts in case he was dissatisfied with the amount

of damages awarded; the mineral lessee had the right to set aside the award only for those reasons for which equity has long vacated arbitral awards. For damages accruing after March 3, 1921, appellee had her choice of proceeding under her contract or under the statute. As has been seen, the parties have stipulated that this arbitration was "had under and pursuant to Acts of Congress."

If the 1921 statute is the only applicable statute, appellant must fail. But on March 2, 1929, Congress passed an act amendatory of the 1921 statute, without expressly repealing the earlier act. The 1929 act in fact merely supplements the 1921 act in the matter of procedure of recovery. The 1929 act re-enacts verbatim the 1921 statute above quoted. It then adds the following: "All claims for damages arising under this section shall be settled by arbitration under rules and regulations to be prescribed by the Secretary of the Interior; but either party shall have the right to appeal to the courts without consent of the Secretary of the Interior in the event he is dissatisfied with the award to or against him. The appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County, to enlarge, modify or set aside the award, and in any such action, upon demand of either party, the issues, both of law and of fact shall be tried de novo before a jury upon the request of either party."

■ The intent of Congress, gathered from the statute and the committee hearings thereon, is reasonably clear. "Either party" may appeal to the courts by filing an action to "enlarge, modify or set aside the award." The prayer of appellant's bill is to "set aside the award," and in the body of the bill the 1929 statute is set out and invoked. Congress, for reasons that doubtless appeared adequate but of which we are not advised, provided that upon demand of either party "the issues, both of law and of fact shall be tried de novo." The appellant has made that demand; neither the statute nor the regulation nor court rule requires that the demand must be in the bill, or in writing, nor is the time prescribed in which such demand shall be made. The same sentence provides that the trial shall be "before a jury upon the request of either party." Appellee argues that, if there is a demand for a trial de novo, it is necessarily a trial before a jury. But we cannot thus excise from the statute the words "upon the request of either party."

■ If the 1929 statute applies, the appellant must prevail. Appellee argues that the 1929 statute only applies to damages that "accrue after the passage of this act," and asserts that the damages accruing thereafter were negligible. The record does not so disclose. We are not advised when some of the structures were erected; but we do know that three of the wells connected with the central pumping plant were completed after that date, and that it is the shackle rods to these wells that cut up the plowed land so badly. But appellee's construction of the statute is too narrow. That part of the 1929 act allowing damages is identical with the 1921 act. All Congress amended was the procedure for ascertaining the amount. Under these circumstances the fair construction is that the right to damages was unchanged; the amendment only made more certain the procedure of assessment. In Steamship Company v. Joliffe, 2 Wall. 450, 458, 17 L. Ed. 805, the amendatory act expressly repealed the act amended; nevertheless the Supreme Court held: "The new act took effect simultaneously with the repeal of the first act; its provisions may, therefore, more properly be said to be substituted in the place of, and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them."

This decision was followed in Bear Lake Irrigation Co. v. Garland, 164 U. S. 1, 11, 17 S. Ct. 7, 9, 41 L. Ed. 327, which is a striking analogy to the case at bar. Under the Utah mechanic's lien statute of 1888, a claimant was required to commence an action to foreclose his lien within ninety days. The 1890 statute enlarged this time to one year, and expressly repealed the 1888 statute. Much of the claimant's work was done while the 1888 law was in force. He brought his action to foreclose, however, not within the ninety days allowed by the 1888 statute, but within the year allowed by the 1890 statute. The Supreme Court sustained the lien, and said: "Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act."

The right to recover damages, given by the 1921 statute, has not, therefore, been repealed, but has existed at all times since March 3, 1921. Does the statutory right to a trial de novo, conferred for the first time by the 1929 act, apply to an award made after the statute was passed, or is that right denied because some of the damages awarded accrued prior to the passage of the act? Two courts of high standing have had before them the question of whether arbitration statutes, not expressly retroactive, are applicable to contracts made prior to the enactment of the statute. Both New York and California enacted statutes providing for the specific enforcement of agreements to arbitrate, and staying proceedings in court pending the arbitration., The question was presented of whether this statute operated on agreements made prior to its enactment. Both courts held that it did. Both courts reasoned that arbitration is a mere form of procedure; that changes in the form of remedies are applicable to proceedings thereafter instituted for the redress of wrongs already done; that, while the statute might be retrospective if viewed in relation to the wrongs, it is prospective if viewed in relation to the means of reparation. Berkovitz v. Arbib, 230 N. Y. 261, 130 N. E. 288 (cited in Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 118, 44 S. Ct. 274, 68 L. Ed. 582); Pacific Indemnity Co. v. Insurance Co. (C. C. A. 9) 25 F.(2d) 930. So here, the 1929 amendment operates on awards and not on damages; since the award was made after the amendment, the question of retrospective operation does not arise.

■ But if we assume counsel's position that the amendment operates on the damages rather than on the award, it does not necessarily follow that the statute is prospective only. There is no constitutional objection to a retrospective statute which makes reasonable changes in the remedy. While the rule is abundantly settled that statutes will not be construed as operating retrospectively unless the legislative intent is unmistakable (United States v. St. Louis, etc., Ry. Co., 270 U. S. 1, 46 S. Ct. 182, 70 L. Ed. 435; Fullerton Co. v. Northern Pacific Ry. Co., 266 U. S. 435, 45 S. Ct. 143, 69 L. Ed. 367; U. S. Fidelity Co. v. U. S. to Use of Struthers Wells Co., 209 U. S. 306, 28 S. Ct. 537, 52 L. Ed. 804), it is after all a question of legislative intent. And there are many cases where statutes affecting procedure and remedies have been held to have

retrospective application. For example, in Missouri Pac. Ry. v. United States, 189 U. S. 274, 23 S. Ct. 507, 47 L. Ed. 811, a remedial statute was passed after the cause was argued in the Supreme Court; nevertheless it was held that the intent of Congress was "to cause the new remedies which the statute created to be applicable as far as possible to pending and undetermined proceedings brought, prior to the passage of the act, to enforce the provisions of the act to regulate commerce." See, also, Lamb v. Powder River Live Stock Co. (C. C. A. 8) 132 F. 434, 67 L. R. A. 558; 25 R. C. L. 791.

We are of the opinion that Congress intended that the court procedure prescribed by the amendment of March 2, 1929, should apply to all awards made thereafter. The right to recover damages, and to have the amount thereof settled by arbitration, had existed since 1921. The only change made by Congress concerned the method of reviewing such awards. Congress must have known that in many, if not most, cases of surface damage, the injury was a continuing one as it is in this case. It is hardly conceivable that Congress intended that in such a case as this, where there is one award, it was subject to attack in part in one way and in part in another; nor is there anything to suggest that Congress intended there should be two arbitrations, one of damages accrued before March 2, 1929, and one of damages accruing thereafter. Such unwieldy procedure should not lightly be read into these statutes designed to simplify the ascertainment of damage.

The decree is reversed, with instructions to try the case de novo, with a jury if either party requests it.

Reversed.

### On Rehearing.

The prevailing party, the appellant, asks for a rehearing. What appellant desires is a different opinion instructing the trial court how to try the case when it comes on for trial.

■ In the opinion, "location sites" were described as "an acre and a half around each well." Anxiety is expressed lest the trial court interpret "around" as meaning a geometric circle around the well as a center. We do not share in the apprehension that the learned trial court will so narrowly construe "around"; that court will doubtless construe it correctly as meaning "about" or "contiguous," and will not concern itself with the precise shape of the acre and a half.

Counsel urges that the fee for "location sites" for wells should be construed as compensating the owner for the use of the number of acres as would result from multiplying the number of wells by 1½; if there are 20 wells, the lessee is entitled to 30 acres, to be selected by the lessee, and used either for roads, shackle rods, or any other purpose, and without reference to its proximity to the well; that 1½ acres each could be used for 29 wells, and 30½ acres for one well. We do not agree. The lease provides for a payment for "each well" for "each location"; that "location sites shall not exceed 1½ acres in area." The word "location" has some meaning. We are not disposed to recede from the construction given this phrase in the original opinion.

Appellant argues that since the lease contemplates the use of the surface, no compensation other than for location and tank sites should be paid for such use. Appellant states that the clause by which it agreed to pay "all damages for the use of the surface other than that included in location and tank sites" should be ignored because it "adds nothing to the general liability assumed by the lessee." We are not disposed to expunge this paragraph from the agreement the parties made. Nor are we disposed to emasculate it by qualifying the word "damages" by some such phrase as "which may result from the negligent acts of the lessee." The contract seems plain enough; the lessee was granted the exclusive right to go on the land and extract and remove the oil. For that privilege it agreed to pay (1) a royalty; (2) a fixed fee for location and tank sites; (3) damages to, that is, compensation for the use of, the surface other than that included in the location and tank sites. We find no warrant for eliminating the third engagement made by appellant.

In Le Croy v. Barney (C. C. A. 8) 12 F. (2d) 363, and Coffindaffer v. Hope Natural Gas Co., 74 W. Va. 107, 81 S. E. 966, 52 L. R. A. (N. S.) 473, there was no such clause in the lease. In Franz Corporation v. Fifer (C. C. A. 9) 295 F. 106, the plaintiff sued for and recovered damages for excessive use, and the judgment was affirmed. The instruction approved was consistent with the relief there prayed for. The point here presented was not before that court, and the language used must be read against the background of the issues. The Oklahoma court, in a case involving a similar lease but a different question, recognized the obligation to pay for the use of the surface. Carter Oil Co. v. Kennedy, 137 Okl. 168, 278 P. 640. Furthermore,

the appellant agreed that its lease should be subject to regulations "hereafter prescribed by the Secretary of the Interior." Thereafter the Secretary of the Interior, as directed by statute, provided for such compensation.

The petition for rehearing is without merit and is denied; the mandate will forthwith issue.