GENERAL AMERICAN LIFE INS. CO. v. ROACH.

No. 29219. Jan. 21, 1941.

Rehearing Denied March 18, 1941.

*111 P. 2d 185.*

Harper, Williams & Boesche, of Tulsa, and Keaton, Wells & Johnston, of Oklahoma City, for plaintiff in error.

Reuben M. Roddie and A. L. Beckett, both of Oklahoma City, for defendant in error.

BAYLESS, J. Kellie M. Roach filed an action in the district court of Oklahoma county against General American Life Insurance Company to recover a sum of money alleged to be due to him under the terms of a certain written contract. Judgment was given in his favor, and the company appeals.

The case was tried on a stipulation as to the facts, and we herewith summarize those facts to an extent sufficient to demonstrate the issues of law presented by the parties.

September 15, 1924, a written contract was made by Roach and a partner (who is not a party to this action and who is immaterial to this action) and International Life Insurance Company, whereby Roach was to sell policies of insurance for which he was to receive a specified per cent. of the first annual premium, and a per cent. of the subsequent annual premiums, commonly referred to in this action as renewal commissions. These renewal commissions of 5 per cent. were to be paid by the International Company to Roach if and when received by it. This agency contract was terminated in 1925, but the renewal commissions were to be paid according to the terms of the contract nevertheless, and were so paid by International Company until about August 25, 1928.

On that date International Company sold its assets to Missouri State Life Insurance Company, and the latter assumed the obligation of the former to Roach, and fully carried it out to August 26, 1933.

On that date the Superintendent of the Insurance Department of Missouri filed an action in the circuit court of the state of Missouri for the city of St. Louis to have the Missouri State Life Insurance Company declared insolvent as a step to the liquidation of its affairs as provided by the applicable laws of the state of Missouri. August 28, 1933, a decree was entered adjudging the company to be insolvent, and authorizing the superintendent to take over its affairs under the laws of Missouri.

September 7, 1933, the said superintendent called to the attention of the circuit court a contract between him, in his official capacity, and the defendant company herein whereby he sold the assets of the insolvent company to defendant company, and sought approval of the court for the sale terms as embodied in the contract. On that date the sale contract was approved and defendant took the assets of the insolvent company and assumed its obligations in the manner specified.

The portion of the contract, article IV, relating to agents' commissions which defendant says governs the contract of Roach, reads:

"Article IV

"Creditors

"Section (a) Agents' Commissions.— The new company does not assume any obligation under any contract heretofore made or assumed by the old company with any agent, whether manager, supervisor or otherwise; but as a part of this Agreement and as a condition precedent to its acceptance thereof, it is agreed that all such contracts and all contracts of whatsoever kind and character for personal service, shall be cancelled and terminated as of or prior to the date of the execution of this Agreement. The new company agrees, however, that any commissions, whether first year or renewal, now or hereafter

due and payable, under the terms of any such contract with any agent, manager, or supervisor, which contract shall have been cancelled or terminated as hereinbefore set forth, will be paid subject to reduction by the lien percentage of 50% or such reduction lien percentage as may be in effect at the date of such payment, under the terms of Article VII hereof relating to Reduction and Repayment of Liens; but no subsequent reduction or extinguishment of lien shall have any retroactive effect upon payments previously made. . . ."

Acting in pursuance of its interpretation of this language, defendant paid Roach a portion of the renewal commissions in the manner hereinafter stated.

September 16, 1933, the said circuit court entered an order directing that notice be given to creditors of the insolvent company by publication, that was duly published, and on October 23, 1933, the said superintendent mailed a copy of the notice so published to Roach. This notice warned those who had claims against the insolvent company dated September 7, 1933, or prior thereto, to present them. It is admitted that the insolvent company had paid Roach all that it had collected on his account up to September 7, 1933, and that he had no claim against it.

Beginning September 18, 1933, and continuing to December 31, 1934, defendant paid to Roach 50 per cent. of the renewal commissions collected from policies written by him and retained 50 per cent. of these renewal commissions and so advised him. Beginning January 1, 1935, and continuing to December 31, 1936, defendant paid Roach 56 per cent. of these renewal commissions and retained 44 per cent. and so advised Roach. Beginning January 1, 1937, and continuing to March 1, 1937, defendant paid Roach 66 per cent. of these renewal commissions and retained 34 per cent. and so advised Roach. It does not appear that Roach ever protested respecting the retention of these portions of his renewal commissions prior to the filing of the action, September 25, 1937, but we suppose Roach must have begun making some contest respecting the retention of a portion of his renewal commissions about March, 1937, when payment ceased.

It is the contention of plaintiff that the law established by our decision in General American Life Ins. Co. v. Roach, 179 Okla. 301, 65 P. 2d 458, applies here, and fully sustains the judgment of the trial court in his favor.

The defendant makes a number of legal contentions, but we think the one relating to estoppel controls, and forces us to reverse the judgment of the trial court irrespective of the law that the plaintiff cites.

Defendant cites section 9434, O. S. 1931, 15 O. S. A. § 75, reading: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known to the person accepting." In support of this statute it cites 21 C. J. 1206-17; Carter Oil Co. v. Kennedy, 137 Okla. 168, 278 P. 640; Bluejacket State Bank v. First Nat. Bank, 155 Okla. 300, 9 P. 2d 2; In re Drumright State Bank, 170 Okla. 480, 40 P. 2d 1059, and decisions of other jurisdictions.

Plaintiff does not offer any argument or cite any authorities on this issue in the answer brief. However, in briefs filed in other cases involving identical issues presented with this case, our attention is called to Hawkins v. Mates, 171 Okla. 186, 41 P. 2d 880, and other Oklahoma decisions relating to equitable estoppel. It is held in those cases that several factors must be considered in equitable estoppel. It is insisted that one or more of these factors preclude the application of estoppel to the plaintiff in this case.

The defendant does not argue any of the elements entering into equitable estoppel such as misleading, false representations, change of position in reliance on plaintiff's acts or words. It seems to rely almost wholly upon the strict language of our statute and the conduct of the plaintiff in the light of that statute.

The defendant does plead that plaintiff stood idly by and permitted it to make the purchase without protest on his part; but we do not find any substance in this charge. The insolvency of Missouri State Life was adjudged on August 28, 1933. It does not appear with certainty when the negotiations culminating in the contract of sale were had, and insofar as the record reveals, the first time Roach could have had knowledge that the sale was proposed was when the attention of the circuit court was called thereto and approval thereof sought, September 7, 1933. Since this approval was sought and received on the same day, and apparently without notice actual or constructive to Roach, we do not believe he can legally or logically be charged with permitting the contract to be made without protest.

However, on the charge that because Roach knew of the sale and the agreement of defendant to pay him a portion of what he should have been paid by Missouri State Life had it remained in business, and could have known fully respecting it had he made ordinary inquiry, and nevertheless accepted payment from the defendant thereunder for about three and one-half years without protest, he is deemed to have consented thereto and to be estopped from now demanding those percentages retained, we agree.

Roach knew at all times that he believed that he was entitled to the full 5 per cent. renewal commission. He knew about September 18, 1933, that the defendant was withholding some part of it, or, to state it another way, he knew that Missouri State Life was insolvent and was not paying him anything, and that on that date and thereafter defendant was paying him 50 per cent., or more, of what purported to be paid to him by Missouri State Life and was holding the remainder. In October, 1933, he received further notice of the liquidation of the affairs of Missouri State Life.

It must be assumed that he knew either (1) that someone was presuming to have authority to interfere with his contractual relations with Missouri State Life to his detriment; or (2) that defendant herein had in some manner undertaken to carry out toward him the obligation of the Missouri State Life but to a lesser extent than he believed he was entitled. It is only logical to say that he could protest and take steps to redress himself.

He did nothing to redress himself for more than three years. If he felt Missouri State Life was still obligated to pay him, he did not file claim against it. If he felt that defendant owed him anything, it had to be by virtue of its contract of assumption or by virtue of his ability to protest and enforce an enlargement of the provisions of the sale contract that applied to him. He did not protest or seek to enlarge the benefits flowing to him from the sale contract. But he took the reduced payments for more than three years.

Under these facts we think he clearly voluntarily accepted the benefits of the transaction with knowledge, or under circumstances where he should have known, for more than three years, and should now be precluded from asserting that the transaction is invalid or unauthorized. 19 Am. Jur. 636 § 36; 676 §§ 62, et seq., and Carter Oil Co. v. Kennedy, supra.

It should be pointed out that the plaintiff in General American Life Ins. Co. v. Roach, supra, filed the action shortly after the General American began withholding portions of the renewal commissions, and no issue of estoppel was made in that case.

No occasion exists to consider the other legal issues argued by the defendant.

The judgment is reversed, and the cause is remanded, with directions to dismiss the action.

WELCH, C. J., CORN, V. C. J., and RILEY, GIBSON, and HURST, JJ., concur.