# TOWNSEND *v.* ST. LOUIS AND SANDOVAL COAL AND MINING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

No. 308.   Argued April 25, 1895. — Decided June 3, 1895.

The issues in this case were substantially decided in the suit between the same parties in the state courts of Illinois decided in the Circuit Court of Marion County August 9, 1883, and affirmed by the Supreme Court of the State, January 25, 1888; and, so far as the plaintiff sets up a new claim here, it is, if not barred by the statute of limitations, too stale to receive favor from a court of equity.

OZIAS TOWNSEND, a citizen of the State of Missouri, brought his bill in equity in the Circuit Court of the United States for the Southern District of Illinois on November 30, 1887, against the St. Louis and Sandoval Coal and Mining Company, and the Sandoval Coal and Mining Company, corporations created under the laws of the State of Illinois, and Isaac Main, Lambert Noland, Frank Seymour, Charles Reinhardt, Jacob Lichty, Margaret E. Edwards, executrix of Francis H. Edwards, deceased, and Lucinda N. Rockwell, executrix of C. N. Rockwell, deceased, all citizens of the State of Illinois. A demurrer to this bill having been sustained, the complainant brought an amended bill against the same defendants on August 14, 1888, which began with averments of the following facts:

On December 12, 1877, the St. Louis and Sandoval Coal and Mining Company was duly incorporated and organized under the laws of the State of Illinois. The purpose of its incorporation was the mining and selling of coal, and the term of its existence was to be ninety-nine years. Its principal office was at the town of Sandoval, Marion County, Illinois, and near that town it was to carry on its mining operations. The capital stock of the company was fixed at $50,000, divided into 500 shares of $100 each. The directors were five

in number, namely : Isaac Main, John B. Mears, Henry Wellhoener, James Sheals, and Ozias Townsend, the complainant. Among others, the testators of the said defendants Margaret E. Edwards and Lucinda N. Rockwell, and the defendants Isaac Main, Lambert Noland, Charles Reinhardt, and Jacob Lichty were subscribers to the stock. All the said directors were stockholders. The complainant's subscription to the stock was 391 shares, of which he was to hold 380 shares as trustee for the company, and to sell the same for its benefit. The complainant attended to the incorporation and organization of the company, secured to himself as its trustee 436 coal mining rights, and purchased with his own money four acres of land to be used for mining purposes, and through which, by means of a shaft and drifts, the coal underlying the lands in respect of which he had secured the mining rights could be reached and utilized. On January 9, 1878, he conveyed the said four acres of land to the company in fee simple. In the work thus done by him in the interests of the company he was continually engaged from July 1, 1877, to January 1, 1878, and besides paying $200 for the land, he expended in connection with the incorporation of the company and the securing of the mining rights the sum of $200. After the organization of the company a regular meeting of its board of directors was held on December 20, 1877, in the city of St. Louis, at which all the members were present, and at which meeting the salary of the complainant as president and *ex officio* superintendent of the company was fixed at $150 per month, to commence on January 1, 1878, and provision made that all his necessary expenses of travel in the interests of the company should be repaid to him. In such action of the directors the complainant did not participate. The complainant at once entered upon the duties of his said office, and continued faithfully to perform them until the dissolution of the company on January 25, 1886. In March, 1878, a duly called meeting of the directors was held in East St. Louis, Illinois, for the purpose, among others, of auditing an account which the complainant had against the company for securing for it the said mining rights, and for money expended by him

as aforesaid.    All the directors were present at this meeting except Isaac Main.    James Sheals resigned as a director, and True N. Blackman was duly chosen a director to fill his place, and participated in the proceedings had.    At this meeting the complainant presented to the board his account in the sum of $12,050 for compensation for his services and for money expended as before stated, and then retired from the board and took no part in its deliberations.    Thereupon, Mr. Mears, one of the directors, offered a resolution, which stated in the preamble thereof that the complainant had devoted a large share of his time for the past year to the organization of the company, and had freely expended his money in promoting its interests, in securing for it large and very valuable mining privileges, and in travel, for all of which he had received no compensation ; and provided as follows:

"*Be it resolved*, 1st, That in full satisfaction for such services and expenditures and for his attention to the business of this company up to and prior to the 1st day of January, 1878, the said Ozias Townsend is hereby allowed and this company binds itself to pay to him the sum of ten thousand dollars, the same to be receipted for by him as in full compensation for said services as aforesaid; and if he shall wish to be endorsed upon the stock held by him as a member of the association as so much paid on account of calls made and to be made on such of the stock as may be held or indicated by him, and such endorsement by the secretary and treasurer of this company shall be held and accounted for as a receipt in full from him for calls on said stocks to the amount of ten thousand dollars as aforesaid.

"*Be it resolved*, 2d, The secretary and treasurer is hereby authorized and directed to endorse upon the stock held by said Townsend, as he shall indicate, payments of calls on the same to the extent aforesaid, and, in the event of such endorsement failing, then he shall have a valid claim against this company to that extent for such services hereby acknowledged to be rendered, but not otherwise."

This resolution the members of the board who were present adopted unanimously.    The complainant accepted this settle-

ment of his claim, and the resolution was duly signed by each member of the board present, being a majority of all the directors.

After presenting the averments, of which the foregoing statement is the substance, and averring that the amount so allowed him was fair and reasonable compensation for the time and labor which he had devoted to the interests of the company, the complainant alleged that the defendant Main, with intent to defraud the complainant and to prevent his collecting the said amount allowed him by the board of directors, and the said salary and travelling expenses, combined and confederated with the other stockholders residing in Marion County, Illinois, to wreck the corporation by the process of the courts, and to buy in all its assets at a sum greatly below their real value, so that ostensibly the assets would all be gone when the complainant should take steps to collect the said debts; that with this end in view, on June 27, 1878, a bill in equity was filed in the Circuit Court of Marion County, Illinois, by Isaac Main, Frank Seymour, Francis H. Edwards, Lambert Noland, Charles Reinhardt, Jacob Lichty, C. N. Rockwell, and Henry Wellhoener (the latter of whom, as the complainant averred, withdrew from the suit upon learning the animus thereof) against the said company, Ozias Townsend, of St. Louis, Missouri, (the present complainant,) and all the other subscribers to the capital stock who resided out of the State of Illinois.

The complainant showed that the said bill alleged, among other things, that on January 10, 1878, the company had entered into a contract with the said Frank Seymour (a defendant in the present suit) to sink a shaft on the said land down to the coal thereunder; that Seymour, in pursuance of that contract, had sunk a shaft to the depth of about 114 feet, when he stopped work for the reason that the company had failed to perform its part of the contract; that the corporation was indebted to Seymour on account of the said work in the sum of about $1700, and owed other persons about $1300 (not mentioning, however, the company's said alleged indebtedness to the complainant Townsend); that the whole cost

of sinking the shaft down to the coal would be about $10,800; that on February 14, 1878, an assessment of five per cent on the capital stock had been made; that the said plaintiffs Isaac Main, Lambert Noland, Jacob Lichty, C. N. Rockwell, Charles Reinhardt, Francis H. Edwards, and Henry Wellhoener paid their assessments, but that all the other stockholders of the company failed to pay; that, by reason of such failure, the stock of all the other stockholders except three (who do not appear in the present suit) was, on April 29, 1878, forfeited, but that the holders thereof were still liable for their indebtedness to the company.; that some time, between March 3 and April 6, (the year not being given,) the directors of the company, with the exception of Isaac Main, fraudulently and without consideration acknowledged, by resolution, an indebtedness of $10,000 to the said Ozias Townsend for services claimed to have been rendered and money expended for the company; that such services were never rendered, and that no money was expended by Townsend for which the company was liable; that, according to the provision of the said resolution, that if Townsend so desired the said $10,000 should be endorsed upon the stock held by him as a member of the company, he had issued, of paid-up stock, to his wife $5000, to George W. Wharton $4000, and to True N. Blackman $1000, which stock those persons pretended to hold as paid-up stock, but for which they had paid nothing to the company; that the said mining rights were conveyed to Townsend in trust for the company, with a condition that a shaft should be sunk upon the land within two years from November 6, 1877; that those rights were valuable, provided the shaft should be sunk within the said time, but that in the then unfinished condition of the shaft the mining rights and the land were not worth enough to pay the company's debts; that such property and the buildings upon the land were all the effects the company owned; that nearly all the stockholders of the company were insolvent; and that in the then present condition of the company it would be useless to attempt to continue its business. The complainant showed that the prayers of that bill were that the affairs of the company might be wound

up, a receiver be appointed, the property of the company be sold, the proceeds of the sale thereof be applied to the payment of the company's debts, and that, if the same should be insufficient to pay the debts, then the stockholders might be assessed to pay the balance, and that the corporation might be dissolved.

The complainant averred that, as a defendant in the said bill so described by him, no summons was served upon him either in his individual capacity or as president of the company, and that neither he nor the company appeared, but that summons was served upon said Isaac Main as a director; that, at the August term, 1878, of the said Circuit Court of Marion County a decree *pro confesso* against the defendants in the aforesaid bill was entered, finding the facts alleged in that bill to be true, and granting the relief therein prayed for; that the court appointed a receiver of the company's property, and directed him to sell the same; that on September 28, 1878, the receiver sold at public sale all the property belonging to the company to the said Isaac Main, who was the only bidder, for the sum of $200, and executed and delivered to him a properly acknowledged deed for the same; that the sale was reported to the court, and that the court, on February 11, 1879, confirmed the same; that at that time the property thus sold was worth $20,000; that on March 24, 1881, an appeal was taken to the Supreme Court of the State, and was there reversed on the ground that the service upon Main as a director of the corporation when he was one of the plaintiffs in the case was not legal service upon the corporation, and that the Circuit Court of Marion County had had no jurisdiction over it.

The complainant further averred that the cause having been remanded to the said court, he and the other defendants therein filed their answer to the bill, denying that the board of directors of the company wrongfully acknowledged an indebtedness to him; that the company in its answer to the said bill denied that it fraudulently acknowledged an indebtedness to him or issued paid-up stock to him or to any one else without consideration, and that such allegations were the only ones in the

said bill and answers in regard to the company's indebtedness to him.

He showed that the case was heard in that court in July, 1883, upon bill, answers, and evidence, and that the court found that the company had, on March 10, 1878, ceased to prosecute the work for which it was organized, leaving debts unpaid to the said Frank Seymour and others (but making no finding with relation to the complainant's claim); that the business of the company had been mismanaged by its officers; that the company was insolvent and that it would be useless for it to resume business; and decreed that the corporation be dissolved and that the appointment of the receiver be confirmed, and ordered the receiver to make a further report.

It was further averred by the complainant that in pursuance of the fraudulent scheme to prevent the collection of his claim against the company, Isaac Main and some of the plaintiffs in the above-described suit organized a new corporation under the laws of the State of Illinois, having its principal office at Sandoval, called the Sandoval Coal and Mining Company, for the purpose of having the property of the old company conveyed to it; that Main, in the year 1879, conveyed to the new company the said land and mining rights and all the assets of the company for the nominal sum of $200, but really upon the consideration that the new company should pay all the debts of the old company, except the said debts of Townsend, the present complainant; that the new company took the property with knowledge and notice of those debts, and also of such scheme to prevent their collection; that the property was charged with a trust in favor of the complainant as a creditor of the old company; that at the time the property was transferred by Main to the new company it was worth at least $20,000, and that that company was not a *bona fide* purchaser of the same.

The complainant showed that at the February term, 1885, of the said court the plaintiffs in the aforesaid bill filed a supplemental bill in the cause, making the new company a party defendant, and that the new company filed an answer thereto, and at same time filed its cross-bill, in which it alleged that

it had bought the said property from Main in good faith and had paid all the debts of the old company, amounting to $2465.30; that it had made valuable improvements under and upon the said land; that the plaintiffs in the said bill against the old company and others were the only legal stockholders in the old company; that the complainant Townsend and others, defendants in that bill, were not *bona fide* stockholders in the old company; and prayed that a conveyance might be made to it of the said property of the old company, and that the old company might be restrained from prosecuting an eject-ment suit against the new company, and also from prosecuting an action of trespass against its officers. The complainant showed that an answer was filed by him to the said cross-bill, and that the case was heard by the Circuit Court of Marion County, and a decree entered therein in August, 1885, grant-ing the relief prayed for in the cross-bill, and that thereupon he and the old company and other defendants in the said original, supplemental, and cross-bills appealed to the Supreme Court of the State, where the decree was affirmed.

It was alleged by the complainant that since the original decree *pro confesso* had been held void by the Supreme Court for want of proper service on the old company, and since there was no new sale of the property under the decree entered after the remanding of the cause, it followed that the sale to Main under the former decree was also void. He further alleged that the question whether the old company, if it had not been dissolved, would have been liable to him for his said services, and for money expended by him for its benefit, was not in issue in either of the said cases and was not determined therein; and that, therefore, he was not estopped by the decrees entered in those cases from asserting in his present bill his rights as a creditor of the old company.

The complainant finally averred that the new company, pretending that in the suit to dissolve the old corporation his said debts due by it were considered, and that the decree entered therein was a final adjudication of his account, had never paid those debts or any part thereof, and refused to

do so. He stated his willingness to contribute his proportionate part toward the payment of his debts if the court should be of opinion that he was a stockholder. He prayed that the defendants might answer his bill, but not under oath; that the court might require the individual defendants, holders of stock in the old company, to pay the balance which, as he alleged, was due thereon; and might decree that the sale by the receiver to Main was void; that the new company was a trustee of the property for the payment of the debts due to the complainant; and that if the new company should persist in its refusal to pay the same its property, or as much as might be necessary to pay the said debts, be sold and the debts be paid with the proceeds.

The Sandoval Coal and Mining Company filed its answer to the complainant's amended bill on August 28, 1888, in which it denied on information and belief that the complainant had performed the alleged services or expended money for the old company's benefit, or had purchased the said land with his own money, and averred the fact to be that the land was paid for by the new company; denied that the complainant obtained any valid title to the said mining rights, and averred that those rights were conveyed on condition that the old company would sink a shaft to a paying vein of coal, and work the same, within two years from the conveyance of such rights, and that the shaft not having been sunk to the coal within the time limited, the rights were forfeited; and denied on information and belief that the complainant had performed the duties of president of the company for the time stated in the bill, or for any time. The defendant alleged that anything which might have been done at the meeting described in the bill at which, as averred therein, the complainant's salary as president and superintendent of the company was fixed at $150 per month, was void for the reason that the meeting was not authorized nor its acts legally ratified; and that the aforesaid action of the board of directors at the meeting in East St. Louis, Illinois, when Main was not present, by which one-fifth of the capital stock of the company was voted to

the complainant, was illegal and void, and was one of the causes which led to the company's dissolution.

The defendant stated that the complainant had correctly presented the allegations of the bill filed for the purpose of dissolving the old company, and averred that, although no summons to that proceeding was served upon the complainant herein, yet he was served by publication, under the statute of Illinois. It was denied by the defendant that the said property was worth $20,000 at the time it was sold by the receiver to Main, and it was averred that the property was not worth more than Main paid for it.

The defendant showed that, although, as was stated in the bill, the aforesaid decree dissolving the old company was reversed by the Supreme Court of Illinois, it was reversed in part only, and that so much thereof as related to the appointment of the receiver was affirmed. It was, therefore, asserted by the defendant that the judgment of the said Supreme Court did not affect the decree entered in the Circuit Court of Marion County after the remanding of the cause, and that the reasons for the Supreme Court's partial reversal did not apply to the complainant herein, because he answered the said bill before the second hearing.

It was averred that by virtue of the decree entered upon the second hearing the master in chancery of the Circuit Court of Marion County executed and delivered to the defendant company a valid deed to the said property ; and that under that deed it held the property by an absolute title, and not in trust for the complainant, as alleged in his bill. The defendant denied that it took the property from Main with knowledge of the complainant's debts against the old company; averred that, on the contrary, it knew nothing of such debts or claims, and insisted that so far as it and the complainant were concerned, all business matters between them were finally settled in the second decree of August, 1885. The defendant prayed that the complainant's amended bill might be dismissed.

The other defendants, on the same day, filed th ir joint and several answer to the complainant's amended bill, denying the same allegations of the bill that were denied in the answer of

the defendant company, and averring, among other things, that the stock of the old company, taken by the complainant, was taken for himself and not in trust for the company. They showed that the said property was in the hands of the receiver from August, 1878, to some time in the year 1885, and averred that in all that time the complainant had not presented to the receiver his said claim or any claim. They stated that they relied upon the aforesaid decrees and orders of the Circuit Court of Marion County as a complete defence to the complainant's amended bill, and denied that any debt was due by them or by the old or new company to the complainant as alleged in the bill, or that the complainant was entitled to the relief which he prayed for, or to any relief. The dismissal of the amended bill was prayed for by them also.

Replication was duly made by the complainant, and a large amount of testimony. taken, on which, and on the amended bill, the answers, and the record of the proceedings had in the state court, the cause was heard in the Circuit Court, and a decree entered therein on February 7, 1889, by which the amended bill was dismissed. From that decree the complainant appealed to this court.

Mr. *Upton M. Young* for appellant.

Mr. *Green B. Raum* for appellee.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

Our examination of this case has not been aided by any findings of fact or law by the court below. It has, hence, been necessary to make a very full statement of the facts as disclosed in the pleadings and evidence. That statement when made, however, does not disclose a case calling for extended treatment.

The present bill of complaint filed in the Circuit Court of the United States, as finally amended, was met by answers, in which, among other matters of defence, it was alleged that, in proceedings instituted in the Circuit Court of Marion

County, Illinois, on June 27, 1878, by Isaac Main and others against the St. Louis and Sandoval Coal and Mining Company, and against Ozias Townsend, (the appellant in the present case,) and which proceedings resulted in a final decree, on August 9, 1883, in favor of the complainants, which final decree was affirmed by the Supreme Court of Illinois on January 25, 1888, the same claims and matters of controversy set up in the present bill were litigated and adjudicated in favor of the appellees and against the appellant in the present case.

Of course, if this were so, such final judgment of the courts of Illinois would be a conclusive bar when pleaded to the present bill, and it is so conceded, as necessarily it must be, by the counsel of the appellant in his argument and brief in this case.

It is, however, contended that the issues involved in this suit were not the same with those involved and adjudicated in the state court. The first question, then, for our determination is whether the matters tried and adjudged in the state courts were the same with those which the appellant sought to have considered in the Circuit Court in the present case.

This question is readily determined by an inspection of the records in the respective cases.

As above stated, the bill as originally filed in the Circuit Court of Marion County, Illinois, alleges the insolvency of the St. Louis and Sandoval Coal and Mining Company, and that Ozias Townsend's claim against that company was without consideration and fraudulent, and asked for the appointment of a receiver and for a sale of the company's property. Upon a decree *pro confesso*, a receiver was appointed and a sale ordered. This decree was on appeal reversed by the Supreme Court of Illinois for want of proper service of process, and the cause was remanded for further proceedings, the receiver being continued. In the court below, when the cause came back, a supplemental bill was filed making the Sandoval Coal and Mining Company a party defendant. The latter company then filed an answer admitting all the allegations in the original and supplemental bills filed by Main and others,

and also filed a cross-bill, in which were recited the facts of the organization and insolvency of the St. Louis and Sandoval Coal and Mining Company, and alleging that it had in good faith bought the coal property and fixtures of the old company from Isaac Main, who had purchased them under the original decree of sale; that Ozias Townsend and his assignees were not *bona fide* stockholders in the old company, and praying the court to so decree, and that the complainants in the original bill were the only valid and legal stockholders in said old company, and that the original complainant be ordered to convey, in the name of the St. Louis and Sandoval Coal and Mining Company by valid conveyance to the said Sandoval Coal and Mining Company, the tract of land on which the shaft was sunk and all mining rights held by said first-named company, and also praying that the St. Louis and Sandoval Coal and Mining Company should be restrained from prosecuting an ejectment suit and a trespass suit that had been brought against the Sandoval Coal and Mining Company. As already stated, this litigation terminated in a decree declaring that the material allegations in the cross-bill were true ; that Isaac Main and the other appellees in the present case were the only stockholders in the St. Louis and Sandoval Coal and Mining Company who had paid anything on their stock, and that they were the only parties or stockholders who had any interest in or right to determine how the assets of said company, which had been dissolved by the decree of the court, should be disposed of, to whom, and for what consideration. The decree further declared that Ozias Townsend and his assignees, defendants in the cross-bill, never had paid anything for their supposed stock in said St. Louis and Sandoval Coal and Mining Company, and that if any such stock had been issued to them it was wrongfully and fraudulently done, and that neither of them had any interest in the assets of said company, nor any right to interfere with the disposition of such assets. The decree further adjudged that Isaac Main had bought the property of the St. Louis and Sandoval Coal and Mining Company, at the instance and request of all the valid stockholders therein, for the purpose of selling the same for enough to pay

off the indebtedness of that company, which then amounted to over two thousand dollars, and that Main afterwards, at their instance and request, sold and conveyed all said property in consideration of the sum of $2465, paid by the complainants in the cross-bill, which sum was all the property was worth; and it was further decreed that a deed of conveyance, in the name of the St. Louis and Sandoval Coal and Mining Company, should be made of said property. .

As already stated, Ozias Townsend and others appealed from this decree to the Supreme Court of Illinois, where the same was affirmed.

To escape from the conclusive effect of this decree, the complainant in the present bill asserts that his claims for services and for money expended by him for the St. Louis and Sandoval Coal and Mining Company were not in issue in said cases, and that as a creditor he can now assert such claim against the assets of that company now in the possession of the new company.

It may not be said that, in no case or in no circumstances, can a creditor of a company dissolved by legal proceedings assert a claim against its assets in the hands of a new company organized on its ruins, but it is clear that this complainant is in no condition to maintain such a claim in the present instance. Not only did the original bill against Townsend and others allege that the stock held by him and by others to whom he had caused stock to be issued had been fraudulently issued, but the cross-bill directly charged that the credit of ten thousand dollars, for which said stock had been issued on account of said Townsend, was fraudulently voted for pretended labor and money furnished and performed by him, when no such labor had ever been performed by him nor any money furnished or expended by him for such company. These allegations were traversed by answers, denying that the company "fraudulently acknowledged an indebtedness to the said Townsend or issued paid-up stock to him without a sufficient consideration or anybody else."

In the present bill Townsend alleges that by his agreement with the St. Louis and Sandoval Coal and Mining Company

he was to have a right to be credited on stock with ten thousand dollars for his services, and in his testimony he says that he gave of this paid-up stock $5000 worth to his wife, $4000 worth to George Wharton, and $1000 worth to True N. Blackman. This stock so issued by Townsend to his wife, Elizabeth Townsend, to Wharton and Blackman, was part of the very stock declared by the Circuit Court of Marion County, in its decree sustaining the cross-bill, to have been invalid as issued without consideration.

The manifest purpose and aim of the present bill are to go back of this decree, and to assert his original claim for services against the new company. We are of opinion that the invalidity of his claim for services was substantially established by the decree that the stock issued therefor was invalid, because issued without anything having been paid for it; and we are also of opinion that even if Townsend's original claim for services had not been merged in stock, but had remained as a valid and unsatisfied claim, no ground has been shown upon which the court below could have declared that such claim could be asserted at law or in equity against the Sandoval Coal and Mining Company or its stockholders. Even if the complainant's claim had been a conceded and *bona fide* claim against the St. Louis and Sandoval Coal and Mining Company, yet, as it had accrued to him, according to his own showing, on January 1, 1878, it could not be successfully asserted in a court of equity against purchasers at a judicial sale made in August, 1878, by a bill filed November 30, 1885. If, as he now is obliged to contend, Townsend did not assert his claim for personal services during the long litigation in the state courts, such claim, if not barred by the statute of limitations, was too stale to receive favor from a court of equity.

The decree of the court below is

*Affirmed.*