## GENERAL AMERICAN LIFE INS. CO. v. ROACH.

No. 26332.　Jan. 19, 1937.

Rehearing Denied March 9, 1937.

Keaton, Wells, Johnston & Barnes, for plaintiff in error.

Roddie & Beckett and Albert L. McRill, for defendant in error.

BAYLESS, V. C. J. Mamie S. Roach, assignee of Kellie M. Roach, was plaintiff in an action in the district court of Oklahoma county, Okla., against the plaintiff in error, General American Life Insurance Company, a corporation, defendant. The parties will be referred to as plaintiff and defendant, respectively. It is conceded by the parties that the plaintiff occupies in every respect the legal position which Kellie M. Roach would have occupied had he brought the action, and for this reason we will not attempt to distinguish between them in relating the facts upon which the plaintiff alleges the cause of action is based.

International Life Insurance Company, of St. Louis, Mo., made a contract with Kellie M. Roach in 1913, by the terms of which Roach became its state manager for the state of Oklahoma. It was agreed that in addition to certain monthly payments and a specified percentage of the first annual premium payment on insurance sold by Roach, Roach should receive a percentage of the renewal premiums on said insurance. Later contracts were made by which the percentages were changed, but since there is no dispute on the final percentages agreed upon, we do not deem it necessary to set out or summarize these contracts in this particular. In 1926 differences arose between Roach and the company, which differences were settled by a contract wherein Roach's right to receive 5 per cent. of the renewal commissions upon the insurance he had written, if and when these renewal premiums were paid from year to year by the policyholders. Roach assigned this contract to plaintiff. In 1928 International Life Insurance Company transferred all its assets, contracts, and choses in action to Missouri State Life Insurance Company, and said company thereafter recognized and fully complied with International Company's contract with Roach and regularly paid to him, or to plaintiff, his assignee, the agreed share of said renewal premiums. In 1933 Missouri State Life Insurance Company was overcome with financial difficulties, and was taken over by the Insurance Commissioner of the state of Missouri in compliance with the laws of that state. A few days later said Insurance Com-

missioner approved a contract between Missouri State Life Insurance Company and defendant herein whereby defendant company became the transferee and owner of all of the assets, property, contracts, and choses in action of the Missouri State Life Insurance Company, and further assumed the obligations of said company to the extent of 50 per cent. thereof. The portion of this contract out of which the controversy in this occasion arises:

"Section (a) Agents' Commissions. The New Company does not assume any obligation under any contract heretofore made or assumed by the Old Company with any agent, whether manager, supervisor or other 'wise; but as a part of this Agreement and as a condition precedent to its acceptance thereof, it is agreed that all such contracts and all contracts of whatsoever kind and character for personal service, shall be cancelled and terminated as of or prior to the date of the execution of this agreement. The New Company agrees, however, that any commissions. whether first year or renewal, now or hereafter due and payable, under the terms of any such contract with any agent, manager or supervisor, which contract shall have been cancelled or terminated as hereinbefore set forth, will be paid subject to the reduction by the lien percentage of 50% or such reduced lien percentage as may be in effect at the date of such payment, under the terms of Article VII hereof relating to Reduction and Repayment of Liens; but no subsequent reduction or extinguishment of lien shall have any retroactive effect upon payment previously made."

The defendant recognizes the binding effect of Roach's contract for the payment of a percentage of the renewal premiums, but contends that such contract was affected by and modified by the section of the later contract above quoted, and admits its liability to plaintiff for 2½ per cent. of said renewal commissions. The defendant has paid to the plaintiff 2½ per cent. of the renewal premiums which it has collected. The plaintiff contends that her assignor's contract was for 5 per cent. of the renewal commissions, that this was a vested right and could not be affected in any manner by the later contract between the two companies, and especially in the manner contended by the defendant. Several divisions of argument are included in the briefs of the parties, but the sole and only question to be determined is whether defendant is obligated to pay plaintiff 5 per cent. or 2½ per cent. of these renewal premiums.

We believe that Roach's right to receive 5 per cent. of the renewal premiums became fixed as soon as the policy has been taken out (Hale v. Brooklyn Life Ins. Co., 46 Hun [N. Y] 274) ; that this right is his property. and when a renewal premium is received by the collecting company his share thereof is held for him (Michigan Mutual Life Ins. Co. v. Coleman, 118 Tenn. 215, 100 S. W. 122) ; and this right existed so long as the policy continued in existence and payments were made by the policyholder, limited in time by the contract (Hercules Mutual Life Assurance Society v. Brinker, 77 N. Y. 435). It is understood, of course. that the right to receive this share of the renewal premiums is dependent upon the payment thereof by the policyholder and is postponed until such payment is made.

That a portion of the renewal premiums collected belonged to plaintiff coincidental with collection is' clearly indicated by the provisions of the contract. (1) The percentage is fixed; (2) in the event of agent's death or the severance of relations, the company was to receive a collection fee of 2 per cent.; (3) agent's right to receive is dependent upon collection in cash, provisions being made for postponement where premiums are paid by notes; (4) elaborate provision for keeping separate the company's net from the gross income received; and (5) the company is to have a lien upon any moneys in its possession belonging to agent to secure agent's indebtedness to company. There are other provisions in the contract, not as material as these, but which lend support to these, and nothing in the contract is susceptible of a contrary interpretation. Agent could not create a lien upon something which was not his; therefore, he, by giving, and company by accepting the lien, definitely stamped the percentage collected as the agent's. In addition, under certain circumstances, agent was to pay company for its services in collecting his percentage. The conclusion that both treated this percentage as his is inescapable.

When payment of the renewal premiums is made by policyholder to the collecting company, the interest of the plaintiff therein and the right to receive the same attaches thereto simultaneously with the collection. That percentage of such premiums belongs to the plaintiff and never is the property of the defendant. In our opinion, taking into consideration the contractual relations between the parties, the International Life Insurance Company and its successors, including the defendant, stood in a trust capacity toward the plaintiff.

Much argument is indulged to the effect that the relation between plaintiff and defendant was that merely of creditor and

debtor, and whether plaintiff had any type of lien for the protection of her rights. This argument presupposes the defendant's title to all of the premiums which it collects from holders of policies written by Roach.

In our opinion this is not the true premise. The Missouri State Life Insurance Company, acting through officials and courts of the state of Missouri, conveyed its property to the defendant. However, the defendant was aware of the existence of contracts such as plaintiff has herein, and it is charged with notice of the property rights existing thereunder. It knew that it did not receive any greater or better title to the property of the vendor than the vendor had. Let us offer this illustration: Suppose there was in existence a policy written by Roach upon which the companies were entitled to receive an annual renewal premium of $100, of which Roach was entitled to receive $5. Can it be supposed that these companies could contract between themselves so as to prejudice or destroy plaintiff's contract? Can it be supposed, further, that the Missouri State Life Insurance Company had the legal power or authority to sell to the defendant this right to receive $100 per year, to the exclusion of plaintiff, or to the extent of $97.50, without her consent? It cannot. In other words, all the Missouri State Life Insurance Company could sell to defendant herein was the right to receive and keep $95 of each $100 of renewal premiums collected from holders of policies written by Roach.

Certain decisions cited and relied upon by the defendant are not in point. In those cases the basis of the agent's action was the theory that it constituted a breach of the contract for the company to sell to another company or to voluntarily incapacitate itself from continuing in business, and the agent would seek damages therefor, in some instances attempting to recover damages in lieu of the percentage of the future collections. Such damages were always denied, it being remarked in the case of Moore v. Securities Trust & Life Ins. Co., 168 Fed. 496:

"There is no claim that the plaintiffs had not received all the commissions due them upon all renewal premiums that had become due when this action was commenced."

Decisions from the federal courts upon somewhat analogous situations are also cited and relied upon. Geddes v. Reeves Coal & Dock Co., 20 Fed. (2d) 48, and the cases discussed therein. Discussion is indulged wherein a difference is made between a promise to pay a specified commission calculated upon future collections and a promise to allow or pay to the agent a specified percentage of future collections. We are unwilling to accept such an attempted differentiation and we do not believe the parties contracted with any such legal effects in mind.

In all of the cases read by us from the citations in the briefs the purchasing companies involved had failed to pay the agent, or at least to recognize his right to receive any money, except Schrimplin v. Life Association, 123 Iowa, 102, 98 N. W. 613. In the discussion of this case the federal courts recognized that some form of recognition or acquiescence in the agent's contract by the purchasing or reinsuring company would create a different situation, and said the rule in that case did not necessarily conflict with the federal rule.

Judgment affirmed.

OSBORN, C. J., and BUSBY, PHELPS, CORN, and HURST, JJ., concur. WELCH and GIBSON, JJ., dissent.