**Robert B. PARRISH, Appellant,**

v.

**WASHINGTON NATIONAL INSURANCE COMPANY, Appellee.**

No. 16858.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 20, 1967.

Rehearing Denied Dec. 1, 1967.

nus Agreement" with Washington National Insurance Company.

The agreement provided for installation of a group insurance plan on a school system unit basis within the geographical area covered by District V of the Texas State Teachers Association. The Group Policy was numbered J2745. A supplemental agreement was entered into on January 6, 1959, and a modified "Amendment to Commission and Personal Production Bonus Agreement" was executed by the parties on November 25, 1960. James M. Parrish died on March 7, 1965.

On September 14, 1965, Robert B. Parrish, administrator of the estate of James M. Parrish, deceased, sued Washington National Insurance Company to recover commissions collected by defendant after the death of James M. Parrish. It was the administrator's position that commissions were due the estate as long as Group Policy No. J2745 remained in force.

Defendant filed a lengthy motion for summary judgment, to which was attached all three written agreements heretofore mentioned.

The court also had before it interrogatories and affidavits on file in the case. The motion set out several separate and distinct grounds for judgment. In a short form judgment the court found: "It is therefore ordered, adjudged and decreed: 1 Defendant's Motion for Summary Judgment is in all things granted, * * *."

Parnass, McGuire, Lewis & Handy, and Thomas R. Harnett, III, and Annette Stewart, Irving, for appellant.

Atwell, Grayson & Atwell, and Anthony Atwell, Dallas, for appellee.

RENFRO, Justice.

On December 22, 1957, James M. Parrish entered into a written agreement styled "Commission and Personal Production Bo-

The appellant administrator contends the court erred in rendering summary judgment for defendant because (1) the contract, as amended, granted decedent the right to commissions as long as Group Policy No. J2745 remained in force; (2) because such ruling constitutes the declaration of a forfeiture not provided for in the contract; and (3) the contract is ambiguous and susceptible to more than one construction, one of which would be in favor of appellant.

The defendant answered the points of error by the following counterpoints:

1. "The trial court was correct in granting defendant's motion for summary judgment because the contract specifically denies the right to renewal commissions upon proper termination of the agency or upon cessation of the agency relationship, both of which occurred as a matter of law.

"(a) No renewal commissions are due appellant, decedent's representative, because the contract was terminated by appellee for 'just cause', which term is specifically defined in the contract. The agent, being dead, could not meet the specific requirements contained in the contract and appellee therefore had just cause for termination by contractual definition.

"(b) No renewal commissions are due appellant in any event because no right to renewal commissions can exist, as a matter of law, unless the contract provides such right to the agent after the termination of the agency relationship; the contract clearly contains no such provision.

"(c) No renewal commissions are due appellant because appellee had the unilateral right to terminate the payment of renewal commissions for just cause in its opinion; the death of the agent furnished such just cause as a matter of law, apart from the specific definitions of just cause."

2. "The trial court simply enforced the terms of the contract and did not declare a forfeiture; the contract and record before this court is clear and unambiguous, and there is no room for further evidence; the trial court, on many independent grounds, was correct as a matter of law."

We sustain the counterpoints and affirm the trial court's judgment in favor of defendant.

The original contract of December 22, 1957, provided:

"The Company agrees to pay commissions to the Agent in accordance with the following Commission Table on the total adjusted earned premium for the following group insurance contract, subject to the provisions hereinafter contained: Group Policy No. J 2745 (District No. V, Texas State Teachers Association). Commission Rates Applicable to Premiums for: First Certificate year 10% Renewal Certificate Year 5%. * * *

"8. The Agent will submit all personally produced business under Master Policy No. J 2745 through the Company's Group Office in Dallas, Texas.

"The Agent further understands and agrees that:

"1. The Company reserves the right to decline to renew said group insurance contract.

"2. The Company agrees to pay commissions for said group contract during the first policy year and during subsequent renewal policy years while said contract is in force at the rate specified in the Commission Table so long as: (a) The Agent is acceptable to and recognized as an Agent of Record by the holder of the group contract; (b) The Agent complies with applicable laws and rulings of state insurance departments; (c) The Agent complies with the rules and regulations of the Company; and (d) The Agent is actively engaged in the promotion of the Group Plan issued to Texas State Teachers Association District V.

"3. The commissions under the Commission Table are to be the total commissions payable to the Agent, and if it is found necessary by the Agent to employ the services of assistants, subagents, or other persons in order to properly service the business and maintain it in force, the expense so incurred will be deducted from the commissions otherwise payable hereunder, provided howev-

er that any persons so employed by the Agent must be acceptable to the Company and to the policyholder."

The last and final "Amendment to Commission and Personal Production Bonus Agreement" is here reproduced in toto:

"The Commission and Personal Production Bonus Agreement dated December 22, 1957, between Washington National Insurance Company, Evanston, Illinois, and James M. Parrish, as amended by the Supplemental Agreement dated January 6, 1959, between the same parties, is hereby amended in the following particulars.

"Effective September 1, 1960, the commission rate applicable to premiums for the first certificate year is reduced to 5%, except that the first year premiums on business which became effective prior to September 1, 1960, shall continue to earn commissions at the rate of 10% for the balance of the first certificate year.

"The last paragraph on the second page of said agreement, identified as paragraph 2 and describing the conditions under which the Company agreed to continue the payment of commissions, is made null and void, and effective September 1, 1960, the following is substituted therefor:

"2. The Company agrees to pay commissions for said group contract while said contract is in force at the rate specified until September 1, 1961 so long as: (a) The Agent is acceptable to and recognized as an agent of record by the holder of the group contract; (b) The Agent complies with the applicable laws and rulings of state insurance departments; (c) The Agent promotes the Group Plan issued to Texas State Teachers Association District V; (d) There is no conflict of interest affecting the Agent's promotion of such Group Plan on behalf of the Company; (e) There is no change in the circumstances or business considerations upon which the payment of commissions is based; (f) The Agent does not influence or attempt to influence the members of the holder of the group contract to become insured with any other company; (g) The Agent does not bring about or attempt to bring about an endorsement or sponsorship of any other company by the holder of the group contract; and (h) There is no substantial change in such Group Plan.

"The supplemental agreement of January 6, 1959, pertains to bonus and is not in issue in this case.

"The payment of commissions under this agreement after September 1, 1961 will be at the Company's pleasure and until further notice; provided, however, the payment of commissions under this agreement will not be terminated unless in the judgment of the Company there is just cause for such termination. Just cause for termination of this agreement shall exist when any one or more of the conditions for the payment of commissions set forth in the preceding paragraph shall not be satisfied, but just cause for termination shall not be limited to such stated conditions.

"Forbearance or neglect of the Company to insist upon the performance of this agreement or to declare a forfeiture or termination in case of a violation of its provisions by the Agent or in case of a failure to satisfy its conditions by the Agent, shall not constitute a waiver of the provisions and conditions of this agreement or of the rights and privileges of the Company thereunder.

"In Witness Whereof, the parties have signed this amendment on 11–25 1960.

"Washington National Insurance Company By (signed) Theo. Heckel, Vice President"

"(Signed) James M. Parrish

It will be noted that the 1960 amendment provided that decedent would, prior to September 1, 1961, receive renewal commissions so long as he complied with eight set out conditions; it then provided that after September 1, 1961, deceased would be entitled to commissions only so long as it was the Company's choice to pay him such commissions but provided that the Company would not terminate the payment of commissions without just cause. "Just cause" was defined in the final agreement as noncompliance or nonexistence of any one or more of the conditions for the payment of commissions set forth in "the preceding paragraph."

After September 1, 1961, as seen, the grounds for cancellation of the agreement and commissions were enlarged.

■ Defendant contended in the trial court and contends here that the plain provisions of the contract gave defendant the right to terminate the payment of commissions both before and after September 1, 1961 if at any fixed time any one of the following conditions was not satisfied: " * * * so long as: (a) The Agent is acceptable to and recognized as an agent of record by the holder of the group contract. (b) The Agent complies with the applicable laws and rulings of state insurance departments. (c) The Agent promotes the Group Plan issued to Texas State Teachers Association District Number V. * * * (e) There is no change in the circumstances or business considerations upon which the payment of premiums is based."

It seems clear the above conditions could not exist after the agent's death and that the Company had just cause to terminate the payment of commissions.

The agent could not then be accepted and recognized as an agent of record by the holder of the group contract; he could not comply with the applicable laws and rulings of the State Insurance Department; he could not promote the group plan and there was of necessity a change in the circumstances or business considerations upon which the payment of premiums was based.

In Woods v. Sims, 154 Tex. 59, 273 S.W. 2d 617 (1954) the Supreme Court held that generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement.

In General American Indemnity Company v. Pepper, 161 Tex. 263, 339 S.W.2d 660 (1960), the Supreme Court said: "Ordinarily, all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. * * * It is well established that a contract is to be construed in accordance with its plain language. * * * The words used in this clause are not susceptible of two meanings. They are clear and unambiguous, and, therefore, there is nothing to be construed. It is only where there is uncertainty as to the meaning of a contract or some portion thereof that rules of construction are to be applied."

The argument of defendant that Parrish cannot fill the condition precedent to payment of renewal commissions, and that the agreement has been terminated by his death, and by the Company, and that nonfulfillment or termination precludes the administrator from recovery of commissions after the death of Parrish is supported in whole or in part by Stancliff v. Southland Life Ins. Co., 172 S.W.2d 521 (Tex.Civ.App., 1943, no writ hist.); Wyatt v. Southwestern Life Ins. Co., 149 S.W.2d 1063 (Tex.Civ. App., 1941, dism., judgment cor.); Billington v. State Life Ins. Co., 88 S.W.2d 780 (Tex.Civ.App., 1935, no writ hist.); and American Nat. Ins. Co. v. Teague, 239 S.W. 604 (Tex.Com.App., 1922).

Furthermore, the contract did not provide for payment of renewal commissions after the termination of the agency relationship.

In Baker v. Missouri National Life Insurance Company, 372 S.W.2d 147 (Springfield Ct. of App., Mo., 1963), it was held: " * * * we recognize and reiterate the firmly-established limitation that an agent is not entitled to commissions on renewal premiums paid after termination of his agency, unless his right to receive such commissions is expressly stipulated in or is clearly to be gathered from his agency contract." In the instant case there is no express stipulation that renewal commissions were to be paid after the termination of the agency relationship and there is no language in the contract from which it "is clearly to be gathered" that renewal commissions were to be paid after termination of the contract.

It is quite clear that the weight of authority is to the effect that an agent cannot recover commissions on renewal premiums (absent an agreement to that effect) following the termination of his agency. Appleman, Insurance Law and Practice, Vol. 16, p. 495, § 9005; Couch on Insurance 2d, Vol. 4, p. 371, § 26:400, p. 376, § 26:403; Cunningham v. Cunningham, 183 S.W.2d 985 (Tex.Civ.App., 1944, no writ hist.); Allied Mutual Insurance Co. v. Roberson, 306 F.2d 130 (4th Cir., 1962); Christensen v. Prudential Insurance Company of America, 204 S.W.2d 459 (St. Louis Ct. of App., Mo., 1947).

"An insurance agent's right to renewal commissions must be derived from the contract itself; *it is not a vested right.*" (Emphasis added.) Couch on Insurance 2d, Vol. 4, p. 372, § 26:400.

Since Parrish had no contractual rights to renewal commissions beyond the termination of his agency, had no vested rights in such renewals, and the defendant had at least five contractual rights upon which it might terminate the agreement for payment of renewal commissions, we respectfully hold that no fact issue was presented to the court and therefore summary judgment was properly rendered for defendant.

Affirmed.