William L. ROUSH, Plaintiff,

v.

NATIONAL OLD LINE INSURANCE
COMPANY, Defendant and
Third-Party Plaintiff,

v.

Herbert CROOK, Receiver, Century Life
Insurance Company, Third-Party
Defendant.

No. CIV–76–0058–T.

United States District Court,
W. D. Oklahoma.

Jan. 31, 1978.

248

W. Rogers Abbott, II, Oklahoma City, Okl., for plaintiff.

Jack R. Durland, Jr. of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for National Old Line Insurance Co.

David L. Russell of Benefield, Russell, Tyree & Freede, Oklahoma City, Okl., for Herbert Crook, Receiver.

## MEMORANDUM OPINION

RALPH G. THOMPSON, District Judge.

This case comes before the Court on a Motion for Summary Judgment filed herein by William L. Roush, plaintiff. This motion has been responded to by the defendant as well as the third party defendant. The Court has considered the briefs of the parties, researched the authorities applicable to this case and determines that plaintiff is not entitled to summary judgment.

### Facts

Plaintiff Roush brings this action against National Old Line Insurance Company (National) seeking to impose a constructive trust upon monies held by National as renewal premiums which have been collected from policy holders to whom Roush has sold policies of insurance. Roush, for a number of years, was General Agent for Century Life Insurance Company (Century Life) for the State of Oklahoma and sold most of the policies here in question within the State of Oklahoma, although he had some policy holders in New Mexico and Texas. Roush was made General Agent for the State of Oklahoma by Century Life in June, 1963. The contract between Century Life and Roush recites that it was made at Fort Worth, Texas, where the Century home office is located. The contract provides in relevant part:

IV COMPENSATION

1. Overwriting Commission—A first year and renewal overwriting commission equal to the differnce, if any, between the Schedule of Commissions of the Agent's Contract between the General Agent and the Company and the first year and renewal commissions credited to the Agent on business produced while assigned to the General Agent.

2. Service Fee—Beginning the second policy year and provided the General Agent is in the active service of the Company, a lifetime service fee of 5% of the premium received on all periodic premium life, endowment and term policies produced by the General Agent and the Agents assigned to him. Upon attaining Age 65 while in the active service of the Company, regardless of future active service with the Company, the General Agent shall be entitled to the lifetime service fee during his lifetime. Should the General Agent become totally and permanently disabled while this contract is in force, the Company will pay to him the lifetime service fee during his lifetime. The Company may from time to time require additional proof of the continuance of such disability.

A. COMMISSIONS

1. All Commissions are due and payable only when the full premium has been paid.

2. While this contract remains in force the Agent shall be entitled to the renewal commissions shown in the Schedule of Commissions as long as there is in force $50,000 of insurance produced by him.

B. REASONS FOR TERMINATION

1. The death of the Agent.

2. Either party to this contract giving to the other written notice of his or its desire to terminate the contract at least thirty (30) days prior to the day fixed for its termination, such notice to be delivered personally or mailed to the other party at his or its last known address.

C. CONDITIONS RELATING TO COMPENSATION UPON TERMINATION

1. If this contract is terminated by the death of the Agent, his executors, administrators or assigns shall receive all compensation outlined in Section A.

2. If this contract is terminated in accordance with Paragraph (B–2), the Agent will be paid all compensation outlined in Section A.

G. INDEBTEDNESS

All indebtedness, whatsoever the nature, due the Company and all unremitted premiums collected for the Company by the Agent shall with interest at the rate of 6% per annum be a first lien on all present or future commissions accruing under this contract and be the personal liability of the Agent. In the case this Contract is terminated by either party such indebtedness shall immediately become due and payable.

J. PLACE OF PERFORMANCE

The parties hereto agree that this contract shall be performable in Fort Worth, Tarrant County, Texas, and venue for any action growing out of this contract shall be Tarrant County, Texas.

In 1969, Century Life was overcome by financial difficulties and was taken over by the Insurance Commissioner of the State of Texas. In approximately June, 1969, plaintiff was directed by the Insurance Commissioner of the State of Oklahoma to cease and desist selling insurance for Century. On October 1, 1969, a Final Judgment, Permanent Injunction and Order Appointing Permanent Receiver was entered in *The State of Texas v. Century Life Insurance Company, et al.,* number 174,793 District Court of Travis County, State of Texas.

That judgment and order established the third party defendant's predecessor, Tom I. McFarlane, as Permanent Receiver of Century Life. The order provided that the claims of all creditors must be presented to the Receiver on or before September 30, 1970. The order fixed the rights of all parties interested in the receivership as of September 30, 1969, pursuant to Article 21.-28 of the Texas Insurance Code. This order was not appealed and has become final.

The deposition of Roush establishes that he was aware of the receivership. He has never filed a claim with the Receiver setting forth his right to renewal commissions as a claim against the assets of the delinquent estate.

On November 7, 1969, National and Receiver entered into a re-insurance agreement which assigned to National certain assets of Century including the insurance policies sold by plaintiff. The re-insurance agreement further provided:

It is agreed and understood that National Old Line shall have the right to collect premiums on policies and contracts assumed by it under this agreement becoming due on and after October 1, 1969, free and clear of any and all agent's commissions and/or service fees, and that National Old Line assumes no liability for the payment of any agent's commissions and/or service fees in connection with the policies and contracts so assumed and re-insured under this agreement.

The plaintiff's deposition makes it clear that he was advised of this re-insurance agreement.

Plaintiff filed this lawsuit on January 19, 1976, seeking to impose a constructive trust on the renewal premiums held by National to the extent that those premiums represent renewal commissions or service fees which, under his contract with Century, are assertedly due him. Roush has filed no action against Century or its receiver to recover these commissions and/or service fees. Plaintiff alleges that between October 1, 1969, the effective date of the re-insurance agreement, and October 1, 1976, defendant has collected $372,177.41 in re-

newal premiums from policies sold by him and he is entitled to his commissions on these premiums in the amount of $27,-913.31.

### Plaintiff's Contentions

Plaintiff claims that *General American Life Ins. Co. v. Roach,* 179 Okl. 301, 65 P.2d 458 (1937) is the only controlling precedent applicable to this case. In that case, plaintiff's assignor (also named Roach) was the general manager for the State of Oklahoma for International Life, a Missouri insurance company. It was agreed between International and Roach that in addition to certain monthly payments and a specified percentage of the first annual premium payment on insurance sold by Roach, he should receive 5% of the renewal premiums on such insurance. International Life transferred all of its assets to Missouri State Life which continued to pay plaintiff the appropriate commissions until it was overcome by financial difficulties and was taken over by the Insurance Commissioner of the State of Missouri. The Insurance Commissioner approved a contract between Missouri State Life and General American Life wherein General American became the transferee and owner of all of the assets, property, contracts and choses in action of Missouri State Life and further assumed 50% of the obligations of the company. It was agreed that the rights of agents to receive renewal commissions was terminated but that General American Life agreed to continue to pay the agents 50% of the amount to which they had previously been entitled.

A majority of the Oklahoma Supreme Court held that Roach's right to receive 5% of the renewal premiums became fixed as soon as the policy had been taken out, this right was his property and when a renewal premium is received by the collecting company, his share thereof is held by them for him in trust. The Court stated that this right existed as long as the policy continued in existence and payments were made by the policy holder. It was understood, of course, that the right to receive this share of the renewal premiums was dependent upon the payment thereof by the policy holder and was postponed until such payment was made. The Court concluded that five items contained in the contract between the agent and the original insurance company clearly established that the right to receive renewal commissions belonged to the plaintiff. 1) the percentage was fixed; 2) in the event of agent's death or the severance of relations, the company was to receive a collection fee of 2%; 3) agent's right to receive was dependent upon collection in cash, provisions being made for postponement where premiums were paid by notes; 4) elaborate provisions existed for keeping separate the company's net from the gross income received; and 5) the company was to have a lien upon any monies in its possession belonging to agent to secure agent's indebtedness to company.

The Court commented that the agent could not create a lien upon something which was not his, therefore, by his giving and the company's accepting the lien, the percentage collected was definitely stamped as the agent's. The Court further commented:

> The Missouri State Life Insurance Company, acting through officials and courts of the State of Missouri, conveyed its property to the defendant. However, the defendant was aware of the existence of contracts such as plaintiff has herein and it is charged with notice of the property rights existing thereunder. It knew that it did not receive any greater or better title to the property of the vendor than the vendor had.

Likewise, Roush claims that his right to receive renewal commissions, as renewal premiums are paid, is vested. He claims that neither Century Life nor its receiver could transfer his renewal commissions to National. Plaintiff claims that because a majority of these policies were sold in Oklahoma and that the renewal premiums were paid from the policy holders in Oklahoma that Oklahoma law should govern his right to renewal commissions.

### Defendant's Contentions

The defendant contends that the outcome in this case is not controlled by *General American Life Ins. Co. v. Roach*, 179 Okl. 301, 65 P.2d 458 (1937), but that this case should be determined through the application of Texas law. The defendant maintains that the provision in the contract stating that the contract was performable in Fort Worth, Tarrant County, Texas, and that venue for actions growing out of this contract should be in said county is a choice of law clause which should be given recognition by this Court as an intention of the parties that their contract should be governed by Texas law.

Defendant sets forth in its brief that Texas Insurance Code, Art. 21.28 provides that when a Texas court of competent jurisdiction determines that a receiver should take charge of the assets of an insurer, the assets of such insurer are in the custody of the court and the receiver becomes vested with the title to all such assets as of the date of the commencement of the delinquency proceeding. Section 2(c) provides:

Rights Fixed. The rights and liabilities of any such insurer and of its creditors, policy holders, members, officers, directors, stockholders, agents, and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date of the commencement of the delinquency proceedings, subject, however, to the provisions of Section 3 with respect to the rights of claimants holding contingent claims, and as otherwise expressly provided in this Article.

The Insurance Code also sets forth timetables for notice to potential claimants as well as a timetable within which all persons who may have claims against such insurer shall present proof of the claim to the insurer. Defendant relies upon the case of *Holt v. Wheeler*, 301 S.W.2d 678 (Tex.Civ.App.1957) as establishing that the filing of a claim with the receiver is a prerequisite to the institution of any action in Court upon any claim against an insolvent company which is subject to a delinquency proceeding. Defendant maintains that it is the assignee of the block of insurance policies here in question as the result of a court-approved contract with the receiver of Century Life. The contract provided that defendant should have the right to receive renewal premiums on these policies free and clear of any claim of any agent for renewal commissions and/or service fees. Defendant asserts that if this Court should find that it is liable to the plaintiff for his renewal commissions and/or service fees that defendant should have recovery over and against Herbert Crook, Receiver of Century Life. Defendant and Herbert Crook, third party defendant, agree that plaintiff's failure to file a claim with the receiver bars him from now seeking to impose a constructive trust on monies held by defendant. *Holt v. Wheeler*, supra.

Defendant asserts that it is an accepted rule that an agent's right to commissions on renewal premiums depends upon the contract existing between the agent and the insurance company. It asserts that a majority of courts have found against the right of an agent to commissions on renewal premiums paid after he has been rightfully discharged, relying upon *Wallman v. United Casualty Co.*, 147 F.2d 636 (3rd Cir. 1945). Defendant argues that when an insurance company becomes insolvent the contract of an agent with the company is terminated and the agent is not entitled to commissions on renewal premiums thereafter collected. *People ex rel. Palmer v. Peoria Life Ins. Co.*, 376 Ill. 517, 34 N.E.2d 829, cert. denied 314 U.S. 688, 62 S.Ct. 300, 86 L.Ed. 551; *O'Hern v. Delong*, 298 Ill.App. 385, 19 N.E.2d 214 (1939) and Annot. 36 A.L.R.3d 1018 (1971). Defendant also relies upon *Liberty National Ins. Co. v. Reinsurance Agency, Inc.*, 307 F.2d 164 (9th Cir. 1962) and *Myers v. Protective Life Ins. Co.*, 342 So.2d 772 (Ala.1977).

### Jurisdiction

The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332 due to the complete diversity of citizenship existing between the plaintiff and defendant. The amount in controversy, exclusive

of interest and costs, exceeds $10,000. The substantive aspects of this case are strictly governed by state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the twin aims of *Erie*, as re-expressed in *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1964), to discourage forum shopping and to avoid inequitable administration of the laws, federal district courts, when deciding questions of conflict of laws, must follow the laws prevailing in the states in which they sit. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

### Agent's Right to Commissions

■ An agent's right to commissions on renewal premiums depends upon the contract existing between the agent and the insurance company. This is true under both Oklahoma and Texas law. *Wagner v. Land*, 152 Okl. 225, 4 P.2d 81 (1931); *Central States Life Ins. Co. v. Walker*, 143 Okl. 168, 287 P. 997 (1930); *Parrish v. Washington Nat'l Ins. Co.*, 421 S.W.2d 117 (Tex. Civ.App.1967) and *Billington v. State Life Ins. Co.*, 88 S.W.2d 780 (Tex.Civ.App.1935).

■ The contract of June 1, 1963, is the source of plaintiff's claim for commission here. Oklahoma courts will recognize an express provision in a contract that the law of a particular state is to control, unless that law is contrary to the public policy of Oklahoma. *National Life & Acc. Ins. Co. v. Whitlock*, 198 Okl. 561, 180 P.2d 647 (1946). However, paragraph J in the June 1, 1963, contract falls short of such an agreement. It establishes a choice of venue (however venue is not here in issue), and states that the contract is *performable* in Tarrant County, Texas. It is clear from the conduct of the parties that it was also performable in New Mexico and Oklahoma. It would present a closer case if the parties had agreed that the contract "is to be performed" in Texas. In Note, Conflicts of Law Symposium, 18 Okl.L.Rev. 379 (1965), it is observed at 383:

. . . [A]n implied intent of the parties that foreign law is to control will also be honored. Where foreign law is applied under either of these rules, a defense against enforcement that is good in the particular foreign jurisdiction is also good in Oklahoma.

Oklahoma cases deciding validity by foreign law (because of either an express provision or an implied intent of the parties) are also subconscious attempts by the court to apply better-reasoned choice of law theories. For example, in one case the fact that the contract was to be performed in Colorado was considered an expressed intent that Colorado law should control. [footnotes omitted] * * *

An examination of all cases cited by the note author show, in each case, a specific agreement that the laws of a particular state apply. Even in *Legg v. Midland Savings & Loan Co.*, 55 Okl. 137, 154 P. 682 (1916), cited in support of the last quoted sentence, the plaintiff had agreed "that he would be bound by the laws of the State of Colorado and the rules and regulations of the association". The by-laws of the association provided that "all loans shall be construed as having been made in Denver, Colo., and with reference to the laws of said state". Additionally, the mortgage and non-negotiable bond provided that the bond was to be delivered and its condition performed in Colorado "and all respects governed by the laws of that state". Therefore, more than a reference as to where a contract is performable is required to constitute a choice of law clause. The Oklahoma rules with respect to the laws to be applied to contracts, in the absence of a valid choice of law clause, were summarized by Judge Murrah in *Monahan v. New York Life Ins. Co.*, 26 F.Supp. 859 (W.D.Okl. 1939):

"[T]he performance of a contract is governed by the law where it is to be performed and the remedy by the law where suit is brought, all matters which bear upon the execution, interpretation, and validity of the contract are determined by the laws of the place where it is made."

■ The obligation to perform in question here is that of Century (now National)

to pay renewal commissions or service fees. Although Roush sold policies in Oklahoma and the policy holders mailed in the premiums from Oklahoma, it would appear to have been the intention of the parties that Century would accomplish its task of paying Roush at the home office in Fort Worth, Texas. The Court concludes that Century's obligation is governed by the laws of the State of Texas.

The interest of an agent, who has devoted many years to selling policies of insurance for one company, who has conferred a substantial benefit upon the company and who has come to rely upon renewal commissions to provide financial security for his later years, are readily recognizable. It is easy to see how Judge Merrill in his dissent in *Liberty National Ins. Co. v. Reinsurance Agency, Inc.*, supra, concluded that an assignee company cannot accept the benefit of the business the agent has produced and not accept the corresponding obligation to pay the agent his agreed share of the renewal premiums.

Upon the insolvency of an insurance carrier, policyholders as well as agents face potential losses. In the event of liquidation often policy holders receive only a pro rata share of the assets along with all creditors. When the company is rehabilitated or a re-insurance agreement is reached, a lien may be placed on cash values of ordinary life policies. *Myers v. Protective Life Ins. Co.*, 342 So.2d 772 (Ala.1977).

Creditors may have claims of all types against the delinquent carrier. These creditors may be lenders, claimants for benefits under policies or providers of goods and services.

Most states have concluded that the Court supervising the delinquency proceedings along with the Insurance Commissioner and/or receiver are best able to balance these interests. In order to adequately balance the interests involved, all claims must be presented.

There is a strong possibility that the laws of Oklahoma may now be identical to that of Texas. In 1957, the Oklahoma Legislature adopted the Uniform Insurers Liquidation Act. The Oklahoma version was predominantly patterned after that adopted in Arizona. It became Article 18 of the Oklahoma Insurance Code, 36 O.S.1971, §§ 1801 to 1835. In 1975, it was recodified as §§ 1901 to 1935 and a new Article 18 entitled Supervision and Conservatorship of Insurers was adopted. 36 O.S.1977 Supp. § 1925 is very similar to the above quoted portion of the Texas Insurance Code which fixes the rights and liabilities of all parties interested in the delinquent estate as of the date of the liquidation order.

> The rights and liabilities of the insurer and of its creditors, policyholders, stockholders, members, subscribers, and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this article with respect to the rights of claimants holding contingent claims.[1]

Additionally, provisions requiring the filing of claims (§ 1930), the allowance of claims (§ 1929), the proof of claims (§ 1918), and the priority of claims (§§ 1919 and 1927), are to be found in the Oklahoma Act. Although Texas has not adopted the Uniform Act, the states of Alabama, Idaho and Illinois have, and the power of the supervisory court to cut off an agent's right to renewal commissions has been recognized in those states. *Myers v. Protective Life Ins. Co.*, supra; *Liberty National Ins. Co. v. Reinsurance Agency, Inc.*, supra; *People ex rel. Palmer v. Peoria Life Ins. Co.*, supra. There have been no reported cases in Oklahoma addressing this issue since Oklahoma's adoption of the Uniform Act, however, it is predictable that the result would be in line with that of other uniform states.

---

1. The fact that the Texas statute specifically mentions agents and under the Oklahoma statutes they would have to be included as "other persons" interested in the estate may be held to have some significance. However, the Court is not aware of any reported case making such a distinction.

Plaintiff suggests that we are not dealing with contract rights but vested property rights. He argues that the remedy being controlled by the law of the forum, the Court should exercise its equitable powers to impose a constructive trust on the money held by National.

This appears to have been the approach taken in *General American Life Ins. Co. v. Roach*, 179 Okl. 301, 65 P.2d 458 (1937). However, *Roach* fails to discuss the conflict of laws issue and there is no indication what the law in Missouri was at the time. The Oklahoma Supreme Court concluded that the Missouri officials and courts lacked the power to do what was attempted in that case.

A different situation is presented here. Roush nowhere claims that the actions of the Receiver and Travis County District Court are not authorized under Texas law.

 Additionally, equitable defenses are available to the imposition of a constructive trust. See *General American Life Ins. Co. v. Roach*, 188 Okl. 515, 111 P.2d 185 (1941); *General American Life Ins. Co. v. Jacobs*, 188 Okl. 519, 111 P.2d 188 (1941); and *General American Life Ins. Co. v. Cantrell*, 188 Okl. 520, 111 P.2d 190 (1941), where the Oklahoma Supreme Court held, in cases apparently involving the identical transactions involved in the earlier *General American Life Ins. Co. v. Roach* case, that the plaintiffs in these three cases, having waited over three and a half years to protest, were estopped to assert that the transaction was invalid or unauthorized. Although the elements of estoppel may not be present here, because the plaintiff has not received a benefit (one half of the renewal commissions were accepted for three and a half years before protest in *Cantrell*, *Jacobs*, and the second *Roach* cases), Roush, having notice of the Receivership in 1969, making no claim or registering no objection in that action, and waiting until 1976 to file this action, may well be guilty of laches. This issue is properly before the Court. Defendant has raised the statute of limitations in its answer. It is the legal equivalent to this equitable doctrine. "Laches" has been defined as such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar in equity. 27 Am.Jur.2d *Equity* § 152 p. 687.

The basis of the doctrine of laches is said to be public policy, which requires, for the peace of society, the discouragement of stale demands. *Mackall v. Casilear*, 137 U.S. 556, 11 S.Ct. 178, 34 L.Ed. 776 (1890). See also *Townsend v. St. Louis & Sardoval Coal & Mining Co.*, 159 U.S. 21, 15 S.Ct. 997, 40 L.Ed. 61 (1895).

 The Court is of the conclusion, as evidenced by the above discussion, that the plaintiff is not entitled to judgment in his favor as a matter of law. Therefore, plaintiff's Motion for Summary Judgment is hereby overruled.

It is so ordered this 31st day of January, 1978.